# CALDWELL et al. v. SHELTON et al.—
## 221 S. W. (2d) 815.

Western Section.   July 2, 1948.

Petition for Certiorari denied by Supreme Court, October 16, 1948.*

---

*Designated for publication June 15, 1949.

Pigford & Key, of Jackson, for appellants.

Moss & Benton and Herron C. Pearson, all of Jackson, for appellees.

BAPTIST, J.   The bill was filed by W. A. Caldwell and Donald Weaver, administrators of the estate of Sara Helen Shelton, deceased, against the heirs at law of the said Sara Helen Shelton.

A declaratory judgment is sought as to how and to whom the personal property of the said Sara Helen Shelton, deceased, should be distributed.

It is alleged that Sara Helen Shelton died in Madison County on July 25, 1943.

That, for some years prior to her death, she had resided in Waco, Texas, and had come to Jackson, Madison County, Tennessee, for the purpose of burying her mother early in June 1943 and had remained in Jackson until she died.

That under the laws of the State of Texas, the personal estate of an intestate decedent is distributed equally to all paternal and maternal kindred, while under the laws of Tennessee such estate would be distributed to the next of kin.

That if Sara Helen Shelton was domiciled in Tennessee at the time of her death, her personal estate would go to her aunt, Mrs. F. M. Patton, a resident of Madison County, as her next of kin, but if the decedent had her domicile in Texas, at the time of her death, her personal estate should be distributed among and between the said Mrs. Patton and a number of first cousins residing in Texas and elsewhere.

That the administrator could not make settlement until advised as to the domicile of the said Sara Helen Shelton at the time of her death.

Therefore the complainants prayed for a declaratory judgment as to whether the decedent was legally domiciled in the State of Tennessee or in the State of Texas at the time of her death.

Seven of the collateral kindred of the decedent, being her first cousins, answered the bill on behalf of themselves and all others of the class they represented, and denied that Tennessee was the place of the legal domicile of the said Sara Helen Shelton at the time of her death and aver that the State of Texas was the place of the legal domicile of the decedent at the time of her death, and that her estate must be distributed according to the laws of distribution of the State of Texas.

Mrs. F. M. Patton died testate on March 11, 1945, and her son, M. C. Patton, as executor of her will answered. Mrs. Patton had formally entered her appearance and waived service of process.

The answer of M. C. Patton, as executor, averred that Sara Helen Shelton was domiciled in Tennessee at the time of her death and that her personal estate should be distributed according to the laws of distribution of Tennessee.

That his mother, Mrs. Lillie Shelton Patton, was the next of kin and the sole distributee.

The case was tried by the Chancellor on depositions.

Upon the hearing the Chancellor found and decreed that the said Sara Helen Shelton removed her domicile from Jackson, Tennessee, to Waco, Texas, in 1922, or shortly thereafter, and that Waco, Texas, was her domicile until about the time of her mother's funeral in Jack-

son, Tennessee, in June 1943, about which time she removed her domicile from Waco, Texas, to Jackson, Tennessee; that Tennessee was the place of the legal domicile of the decedent at the time of her death and that her personal estate must be distributed according to the laws of distribution of the State of Tennessee.

That the administrators were entitled to their costs, including reasonable solicitor's fees and ordered a reference to the Master to determine the amount of the fees.

From that part of the decree which found and decreed that Sara Helen Shelton had removed her domicile from Waco, Texas, to Tennessee in June 1943, and to the action of the Court in allowing attorney's fees and ordering a reference, the defendants excepted and have prayed an appeal to this Court and assigned errors.

Aside from the defendants' exception to action of the Chancellor's allowance of solicitor's fees and ordering a reference, the only question raised and to be determined is whether or not Sara Helen Shelton was domiciled in Waco, Texas, or in Jackson, Tennessee, at the time of her death.

This question involves a review of the pertinent evidence thereon.

There are undisputed facts in the record which we think, as did the Chancellor, show that the decedent's domicile was in Waco, Texas, from 1922 to June 1943.

Miss Shelton was an employee at the postoffice in Waco, having been transferred at her request, from a job in the postoffice department at Fort Worth, Texas, about August 1921; that she and her mother resided in Waco from that time until her mother's death in 1943; that Mrs. Shelton had two brothers living in or near Waco who had died, one of them leaving five daughters and the other

two daughters, all of whom lived in Waco or in that vicinity.

She qualified to vote there for at least one year—1939.

She contracted to purchase a home in Waco, in which she and her mother lived.

M. C. Patton, executor, has assigned error on the Chancellor's finding that Miss Shelton's domicile was in Waco until June 1943.

Among the definitions given in 1 Bouvier's Law Dictionary, Rawle's Third Revision, is:

"That place is properly the domicile of a person in which he has voluntarily fixed the habitation of himself and his family, not for a mere special and temporary purpose, but with a present intention of making it his permanent home, unless and until something (which is unexpected and uncertain) shall occur to induce him to adopt some other permanent home."

The contention is based upon the evidence of certain witnesses that the decedent expressed the intention, through the years, of coming back to Jackson sometime in the future to live; that she made efforts to be transferred in her work from Waco to Jackson; that she had written a kinswoman that she planned to come back as soon as she possibly could; that she had had often expressed the intention to return to Jackson eventually to live.

When the decedent went to Waco in 1922, under the circumstances related, her domicile was fixed there and her expressed intention, or hope that at some indefinite time in the future she could return to Jackson and make her home there did not change her domicile.

About the time of the first World War Miss Shelton went to Washington and secured work with the govern-

ment; she was transferred from there to Forth Worth, Texas, and then transferred from Fort Worth to Waco.

■ The burden of proof was upon Mrs. Lillie Shelton Patton and those claiming under her to show that the decedent's domicile was in Jackson at the time of her death.

Mrs. Sallie T. Shelton, mother of the decedent, died in Waco, Texas, on June 5, 1943, leaving surviving the decedent as her only child and heir at law.

Miss Shelton brought her mother's body to Jackson for burial. Just after her mother's burial she consulted a physician and it was found that she had a malignant trouble from which she died on July 25, 1943.

Mrs. Lillie Shelton Patton testified that on the day of the funeral of the decedent's mother, at the home of Mrs. A. S. Russell, where the funeral was held, Helen told her that "she would not return; she didn't expect to go back to Texas; she had come to Tennessee to spend the rest of her life; that she wanted to get work in Jackson if she could, if not she would get work at some other place in Tennessee, she had come to Tennessee to stay," that the witness had no other conversation with her on the subject; that the decedent told her she expected to get a pension if she lived until the time she could get it.

R. S. Patton, son of Mrs. Lillie Shelton Patton testified that he was present when the above conversation took place between the decedent and his mother. Quoting:

"She told me in mother's presence that she didn't expect to return to Texas; that she had come to Tennessee to stay the rest of her life, with the hope of obtaining a job in Jackson, and that in case she failed in that she wished to stay as close to Jackson as she could if she couldn't stay in the town itself."

That he saw Helen on a few occasions in Jackson during the years she was living in Waco and that she indicated that she was coming back to Jackson some day to live, but told him of no specific plan to come back at any particular time—just a general idea she would return.

Mrs. Annie T. Russell, a second cousin of the decedent, testified that after Helen came back with her mother that she stated to her that she never intended to go back to Texas, not only not to live, but not at all; that as long as Helen and her mother lived in Texas Helen regarded Jackson as her home; that several times she made an effort to get work at Jackson; that Mrs. Shelton kept the old home which she owned in Jackson because they always intended to return to Jackson to live; that after her mother's death Helen was very much depressed about herself physically.

Miss Sallie Lee Nelson testified that about two days after her mother's funeral Helen told her she was coming back to Tennessee to live; that Tennessee was her home and her friends were largely here; that she did not intend to work any more in Texas; that it was possible she might have to make a trip there but did not want to go back.

Mrs. Marie Collins Johnson testified that after her mother was buried, Helen said that she intended to stay here; that she didn't want to go back to Texas, she never did like it out there; that Helen knew it might be best to go back to Texas to look after her business affairs, but still she didn't want to go; she said she would much rather not have to do it and if she could avoid it, she wouldn't.

Mrs. Mary Eliza Scott testified that after her mother was buried Helen told her that she hoped she never had

to go back to Texas for anything; that she had a gentleman friend of the family to store her furniture and said she would even have him to send it to her before she would go back and get it.

Mr. W. A. Caldwell, administrator, testified that he was a banker; that he had known Helen Shelton all of her life; that she and her mother had for many years advised with him about their business affairs; that after Helen became seriously ill she turned over her business to him and gave him a general power of attorney to sign checks for her and relieve her of any financial worry; that Mrs. Shelton owned a home in Jackson and he was under the impression that they didn't want to sell it because they expected to live in Jackson; that at one time while she lived in Texas Helen requested him to try to secure employment for her or get a transfer to the post office in Jackson, but it could not be done; that he saw her probably half a dozen times in the interim between her mother's death and her death and that she never said anything to him about staying in Jackson and not going back to Texas; that she told him she didn't like Texas but he didn't think she had any idea of giving up her job and she didn't want to leave there until she got something in Jackson.

That the power of attorney was drafted by C. E. Pigford, Attorney, and he did not remember whether he himself requested Mr. Pigford to prepare it or whether Miss Shelton did so.

The power of attorney is exhibited and begins as follows:

"Know all men by these presents: That I, Sara Helen Shelton, formerly of Waco, Texas but now of Jackson, Tennessee do hereby etc."

The above is the substance of the evidence tending to show the contention of the executor that Miss Shelton's domicile was in Tennessee at the time of her death.

A number of depositions were taken by the appellants here tending to show that Miss Shelton had not removed her domicile from Texas to Tennessee at the time of her death.

Mrs. Ada T. McKinney, first cousin of the decedent, testified that she lived in a small town about twenty miles from Waco; that she saw Helen and her mother many times during their residence in Texas and that they visited each other at intervals during that time; that they were always together Thanksgiving and Christmas and when Miss Shelton had a holiday they would come and spend a day or so with them; that when Miss Shelton and her mother first came to Waco they rented an apartment for several years, then they had a home on Columbus Street but the home was sold during the first part of the war and they had to move, and that she then bought a home on Washington Street into which she moved her furniture; that she attended the funeral of Mrs. Shelton at Waco; that when Miss Shelton took her mother to Jackson for burial, she left her furniture in the home; that she left her automobile either in her garage or in some storage place to have some work done on it while she was gone; that she never heard Miss Shelton make any statement that she was leaving Waco, giving up her home and going to move to Jackson.

S. T. McKinney, husband of Mrs. Ada T. McKinney, testified that he and Mrs. McKinney visited the decedent and her mother and that he never, during the time she lived in Waco, heard Miss Shelton say anything about giving up her home in Waco and going to Jackson to live;

that he attended Mrs. Shelton's funeral and on that occasion he did not hear Miss Shelton say anything about leaving Waco and going to Jackson to make that her home; that he never discussed it with her; that apparently she had moved to Waco for good.

Mrs. Jane Gardner, resident of Waco, testified that she knew Miss Shelton during all the years she lived in Waco and that they visited back and forth; that she attended Mrs. Shelton's funeral; that she talked to Miss Shelton at the church following the service and asked her if she would be back soon, to which Miss Shelton replied "yes"; that she did not think Helen was a normal somebody the last few years of her life because she was never very strong and was always sick.

Mrs. Ann Tudor testified that she married Helen's first cousin and knew her well; that she attended the funeral in Waco and talked to Helen at the time; that nothing was said on that occasion about whether or not she intended to come back to Waco from Jackson, but she took it for granted from her general attitude that she would come back; that she had a letter from Helen written at Jackson enclosing her house key, but the letter did not say anything in reference to remaining in Jackson or returning to Waco.

Mrs. George M. Liddell, a cousin of the decedent and resident of Waco, testified that she visited in the home of Helen and her mother during the time they resided in Waco; that she attended the funeral service in Waco; and accompanied Helen to Jackson and attended the funeral service there; that after leaving the church in Waco she overheard Helen say something to some one that indicated she intended to return to Waco; that she did not discuss the matter with her directly but knew of nothing

done or said which indicated she intended to stay in Jackson; that when she left Waco Helen bought a round trip ticket, or one was bought for her from Waco and return; that she had a letter from Helen written from Jackson in which she said nothing about making Jackson her home.

Mrs. Hazel Thompson Stephens, a first cousin of the decedent and resident of Fort Worth, Texas, testified that she and the decedent were about the same age; that most of the time Helen and her mother were living in Waco the witness lived about 12 miles from there; that they visited frequently and that she never heard Helen or her mother say or intimate that they expected ever to live in Jackson again; that after one of her last visits to Jackson Helen told her that she was the only unmarried one of her group; that all her friends were married and had families; that she had nothing in common with them and it was not any pleasure to go back, she felt odd; that she attended Mrs. Shelton's funeral in Waco and got the definite impression from the circumstances of her departure that Helen intended to return to Waco after the burial of her mother in Jackson; that on the occasion of her mother's funeral one of the other girls asked her if she wouldn't come and live with her and she said she hadn't made any plans and didn't know just what she would do when she got back.

Miss Sarah Thompson, a first cousin of the decedent and a resident of Fort Worth, testified that she frequently visited Helen and her mother; that they referred to Jackson as home just as the witness referred to Clarendon her former home as home though her real home was in Fort Worth; that she never heard Helen say she was going back to Jackson to live; that the last time the witness was

there Helen had just returned from Jackson and told the witness she was not very happy with her visit because so many of her classmates or friends had married or moved away and didn't have as good time as she expected.

Miss Ruth Thompson, sister of Sarah Thompson, testified that she spent the night before Mrs. Shelton's funeral at the home of Mrs. Liddell and had lunch with Mrs. Liddell and Helen before they left for Jackson; that Helen said nothing at that time about an intention to give up her home in Waco or move to Jackson; that the witness invited Helen to come to their house and rest awhile before going back to work, to which Helen replied that she wasn't sure just what she would do when she returned but did not turn the invitation down; that the witness and other friends and relatives were looking for Helen to return and were planning to take care of her when she came back.

Miss Hazel Barnes testified that she knew Helen and her mother during all the time they lived in Waco and they were good friends; that she was with Helen every day after her mother's death and all the morning before she left for Jackson with her mother's remains; that she helped Helen pack her bag, drove her around and tried to help her plan what she would do; that because of Helen's own failing health she thought and suggested that it might be advisable for her to be back in Jackson where she owned a home; that Helen would not listen to the suggestion stating that she would not agree to live in Jackson as things were now, when she had once been so happy there; that the witness had two letters from Helen written from Jackson just prior to Helen's death; that in neither of these letters was any statement that would cause the witness to believe she intended to stay in Ten-

nessee; that one of the letters stated that when she felt a little stronger she would return to Waco and gather up the loose ends of her affairs.

Dr. Herman Hawkins of Jackson, Tennessee, testified that he had known Helen and her mother for many years and that Helen felt very close to him, having always been intimate with the family; that she came to him just after her mother died for an examination at which time she was staying at the home of Mrs. Russell; that she died of a malignant bowel tumor from which she had suffered for some time; that Helen told him everying and talked to him about her affairs; that Mrs. Russell also talked to him about Helen's business affairs and that neither of them said anything about Helen's moving to Jackson or changing her domicile from Waco to Jackson; he was under the impression that if she removed to Jackson, she would do so only after she had worked at Waco a short time in order to get a pension or increased pension; that the matter was under contemplation but not decided; that if she had decided not to return to Waco he would have known it.

R. H. Dunnagan testified that he was custodian of the records of the Texas Fireproof Storage Company of Waco; that in accordance with directions in a letter from Miss Shelton dated June 26, 1943, his Company moved her household belongings and personal property from her home on Washington Street in Waco and stored them in her name in Waco, and where they were stored at the time the deposition was given.

The letter in question was exhibited, the pertinent part of which is as follows:

"I have been advised my possessions must be removed immediately from 2105 Washington Street. Since my

mother's death my health has been completely gone so I can't come to Waco in person.''

Then followed detailed list of the property and directions with reference thereto.

No part of these possessions were directed to be sent to Jackson, and no further statement as to her intentions of returning to Waco.

S. J. Guthrie testified that he represented the Southwell Corporation, engaged in the real estate business; that he made a contract with Miss Shelton to sell her the house on Washington Street, on October 22, 1943; that Miss Shelton put up $175.00 as forfeit; that she was to buy it for $3500.00, $200.00 cash and the balance in monthly payments; that she moved into the house and furnished it, but did not comply with the contract and pay the balance of the down payment; that the Company took the property back and the furniture was picked up by the Texas Fireproof Storage.

L. L. Alexander, postmaster at Waco, testified that Sara Helen Shelton was transferred to the post office at Waco and was employed in that office from August 1, 1921 to the time of her death in June 25, 1943; that Miss Shelton was given leave without pay on April 29, 1943 on account of her mother's illness and did not come back to work from that time; that on June 2, 1943, he wrote the post office department asking them to authorize further leave for Miss Shelton; that a new fiscal year began on July 1st and that the post office at Waco received a letter from Helen Shelton, from Jackson, dated June 26, 1943, making application for sick leave and allowance of vacation time accrued to her credit, which was permissible under the regulations; that she did not resign or notify

him nor his office that she did not expect to return to Waco and he assumed she would resume her employment.

The postal regulations provide that:

"An employee who is absent from duty in a non pay status on July 1st may not be granted sick leave for the new fiscal year unless he returns to duty, or it is reasonable to suppose he will return to duty before the end of a new fiscal year."

Miss Shelton was absent from duty in a non-paying status, having been granted all annual leave to her credit during the illness of her mother.

Upon her written application, accompanied by a statement from her physician, she was granted leave with pay beginning July 1, 1943 on account of illness; that Miss Shelton had sufficient leave to her credit to have retained her in a pay status until about the middle of August and the salary due her from July 1st to July 25th amounting to $132.64 was paid to W. A. Caldwell and Donald Weaver as administrators.

It is stipulated that the decedent was admitted to Memorial Hospital at Jackson on June 28, 1943, and remained there until the date of her death, July 25, 1943.

That the records in the office of collector of taxes in Waco, Texas, show that poll tax exemption certificates were issued to Mrs. S. T. Shelton from 1931 to 1938 and for 1940, 1941 and 1942 and that poll tax receipt was issued to Sara Helen Shelton for the year 1939.

Because the evidence is in conflict as to the decedent's intention relative to a change of domicile we have thought it necessary to set out all the evidence which tends to throw any light on that question.

As heretofore stated we find as a fact that the decedent's domicile was in Waco, Texas, when she left there

in June 1943 to accompany the remains of her mother to Jackson for burial.

At the time she left Waco no expression of any purpose on her part is shown other than to perform this filial duty.

She left in Waco her relatives, her friends, her home, her furniture and other personal possessions, including her automobile. Her place of employment was in Waco. She told such friends or relatives with whom she discussed the matter that she expected to return.

Therefore we must conclude, under the facts and under the law, that she had not abandoned or changed her domicile at the time she left Waco on the trip to Jackson.

It is asserted by the executor that after she came to Jackson she changed her domicile from Waco to Jackson.

The burden of proof is upon the executor to show that fact by a preponderance of the evidence. 28 C. J. S., Domicile, 916, page 34; 17 Am. Jur., Domicil, Sec. 86.

We have recited the evidence of the decedent's relatives and friends that she told them she had come to Jackson to stay and did not intend to return to Texas.

In the case of Brown v. Hows, 163 Tenn. 178, 42 S. W. (2d) 210, 212, opinion by Chief Justice Green, it is said:

"Indeed, we are of the opinion that a bare intent to make a particular place one's residence is not sufficient to establish a domicile. There must be some appropriate action harmonizing with the intent."

It is well settled that to effect a change of domicile there must be both the intention to do so and the actual taking of some steps to carry out that intention.

Also in the case of Sparks v. Sparks, 114 Tenn. 666, 669, 88 S. W. 173, 174, it is said:

"In determining whether or not a change of domicile has been made, it is proper to consider, along with the statement of the party of his intent in the matter, his conduct and declarations, and all other facts that throw light upon the subject."

Also in Denny v. Sumner County, 134 Tenn. 468, 479, 184 S. W. 14, 17, L. R. A. 1917A, 285, it is said:

"One cannot make a permanent, fixed commercial residence with all the surroundings of a permanent home in one place and a domicile in another by a mere mental act."

When Miss Shelton arrived in Jackson she was in mental distress over her mother's death and suffering with an incurable illness from which she died several weeks thereafter. Under these circumstances, according to some of her relatives and friends, she expressed her intention to stay in Tennessee and not return to Texas.

To Mr. Caldwell, her business advisor, and to Dr. Hawkins, her personal physician, with both of whom she talked a number of times, she gave no indication of any such intention.

She took no steps or action to carry such intention into effect. She was either visiting in the home of Mrs. Russell or was in the hospital from the time of her arrival and until her death.

She had left her relatives and friends in Texas under the impression she expected to return. They had been kind and generous in looking after her affairs and she knew they were expecting her to return. To these she gave no intimation that she expected to stay in Jackson.

Her furniture and personal possessions were in Waco. She wrote to the storage company to store it there with

no indication in the letter that she expected later to have it sent to Jackson.

She wrote to the postmaster at Waco about a month before she died requesting that she be kept on the pay roll from and after July 1st, indicating clearly that she expected to resume her position in Waco.

The evidence of R. S. Patton is that she stated she had come to Tennessee to stay with the hope of obtaining a job in Jackson and if not to obtain one in Nashville.

We do not think these facts and circumstances are consistent with any definite settled intention on the part of the decedent to abandon her domicile in Waco at the time the statements are alleged to have been made.

We think the most that can be said is that the evidence shows the decedent was in an uncertain state of mind as to her future plans.

The most that can be said is that the decedent's intention was to live in Jackson provided she could obtain employment there, or that she intended to return to Waco and continue her work there until she could obtain a pension or a larger pension.

We are of the opinion that the Chancellor was in error in holding that the domicile of the decedent was in Jackson, Tennessee, at the time of her death.

Error is assigned on the action of the Chancellor in decreeing that the administrators are entitled to their costs, including a reasonable solicitor's fee for services of their solicitors in the case, to be paid out of the estate before distributed.

■ We think the bill was properly filed by the administrators to the end that the rights of the parties be determined and the administrators could make settle-

ment with the right parties. Therefore they are entitled to have solicitor's fees for such service paid out of the general fund before distribution is made.

It was stated in argument and repeated in the brief that the administrators are strictly neutral; that it doesn't matter with them to whom the fees are paid, as neither they nor counsel representing them have interest therein.

However, in their brief they take the position that the decedent was domiciled in Tennessee at the time of her death, and have presented argument and authorities to sustain that position.

This part of their service was not for the benefit of the administrators, but was for the benefit of Mrs. Patton's estate. This estate is represented by counsel of its own choice.

Therefore, on the order of reference, such service to Mrs. Patton's estate will not be taken into consideration by the Master in fixing the fees to be allowed solicitors for the administrators.

We think the Chancellor's order of reference on the question of an attorney's fee for the solicitors for W. A. Caldwell, trustee, in foreclosure of the trust deed was properly made. This relief was sought in the original bill.

The defendant's assignment of error on that part of the Chancellor's decree holding that Sara Helen Shelton was domiciled in Tennessee at the time of her death is sustained.

The decree is reversed and the cause remanded to the Chancery Court for proceedings there consistent with this opinion.

The costs of the cause, including the costs of this appeal, will be paid by the administrators out of the estate of the decedent, Sara Helen Shelton.

Adams, Special Judge, and Swepston, J., concur.