LOYCE CAMILLE CURTIS, Complainant and Appellant, v. AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant and Appellee.—445 S.W.2d 661.

Western Section. November 22, 1968.

Certiorari Denied by Supreme Court May 5, 1969.

Lucius E. Burch, Jr., Jerry Porter, and Charles G. Morgan, Memphis, for appellant; Burch, Porter & Johnson, Memphis, of counsel.

Leo Bearman, Jr., and J. Heiskell Weatherford, III, Memphis, for appellee.

BEJACH, J. In this cause, Mrs. Loyce Camille Curtis, widow of Jimmy D. Curtis, formerly an employee of Delta Airlines, appeals from a jury verdict and decree of the Chancery Court of Shelby County based thereon, dismissing her bill against American Casualty Company of Reading, Pennsylvania, in which she seeks a recovery of $40,000 under the provisions of a group insurance policy, Number VGA 18177, issued by defendant, American Casualty Company of Reading, Pennsylvania, by the terms of which all employees of Delta Airlines whose applications had been accepted

were insured. Said insurance policy insured against injury or death by accident. In this opinion, the parties will be referred to as complainant and defendant, or called by their respective names.

Complainant's husband had a pilot's license which did not include authorization for instrument flying. He was interested in flying additional hours so as to qualify himself as a pilot of commercial planes. Complainant's husband was issued a certificate of insurance in connection with a master policy which named complainant as a beneficiary. Copies of the master policy and of the certificate are attached to complainant's original bill as Exhibits I and II. Complainant's husband had taken flying lessons from DeSoto Air Park, owned by Mr. and Mrs. Walter Looney, and was permitted by them to fly their planes for the purpose of acquiring flying hours. On May 22, 1966, complainant's husband received a call from Mrs. Looney asking him to fly an airplane to Marion, North Carolina, for the purpose of returning a corpse to Memphis Funeral Home, and he agreed to do so. He was told that he could take someone with him. Curtis thereupon called a friend, inviting him to go along, but that friend declined. Quite significantly for this case, the friend first invited was not an airplane pilot. Curtis thereupon invited Noel Gaines, another employee of DeSoto Airlines, to go along with him. Gaines accepted. Gaines was a licensed flying pilot with instrument flying rating, which rating complainant's husband did not have. There is no proof in the record as to who was flying the plane when they left Memphis at 10:30 A.M., May 22, 1966 in a Piper Comanche. This airplane belonged to Taylor L. Blair, Jr., but was being used by DeSoto Air Park in Southhaven, Mississippi,

from which place they departed with the owner's consent and permission. The airplane in which they were flying developed some mechanical trouble which necessitated landing in Nashville, Tennessee for repairs. They landed there at about 12:20 P.M. and departed, after the plane was repaired, at approximately 6:20 P.M., Nashville time. The airplane crashed into the side of Mt. Mitchell in North Carolina at about 9:32 P.M., Eastern time, at an elevation of 6,384 feet, which is about 300 feet below the peak of Mt. Mitchell which has an altitude of 6,685 feet, the highest point east of the Mississippi River. Both Jimmy Curtis and Noel Gaines were killed in the crash.

Complainant, as the beneficiary under Jimmy Curtis' certificate of insurance, brought suit in the Chancery Court of Shelby County against defendant, alleging that her deceased husband was accidentally killed while riding as a passenger in an airplane driven by Noel Gaines. A jury was demanded to try the issues of fact. The evidence as to who was at the controls of the plane when it crashed is entirely circumstantial. The plane had dual controls, but the proof is that the operator usually sits on the left. No one testified as to who was at the controls, either when the plane left Memphis or when it left Nashville, but the body of Gaines was found on the left side. Also, the weather was stormy at the time of the crash, indicating that the plane might have been flying at that time under instrument control conditions. This indication is met, and to some extent refuted, however, by proof that the airport at Marion, North Carolina had no facilities for landing by instrument control, thus indicating that the plane was not being flown under instrument control conditions. The policy issued by defendant contains the following provision:

PART VII AIR COVERAGE.

The insurance provided by the policy shall apply while the insured person or a dependent covered hereunder is riding as a passenger in any properly licensed aircraft and while an insured person is operating or performing duties as a crew member of any aircraft owned, leased or operated by Delta except that no coverage shall apply while such aircraft is being used for training, testing or dusting operations.''

At the trial of the cause, one question only was submitted to the jury, which was:

''Was complainant's husband riding as a passenger in a properly licensed air craft at the time of his death?

Answer 'Yes' or 'No' ——————''

To this question the jury answered ''No''. After complainant had filed a motion for new trial, which motion was overruled, she perfected her appeal to the Court of Appeals. In this Court she filed seven assignments of error which are as follows:

''ASSIGNMENTS OF ERROR

I.

The Court erred in instructing the Jury with regard to the burden of proof as follows:

'The Court instructs you that the burden of proof on the issue of fact rests upon the Complainant, and if, applying the foregoing rules, you find from the greater weight or fair preponderance of the evidence that Complainant's husband, Jimmy D. Curtis was a passenger,

riding as a passenger in the flight wherein he met his death, you will answer issue number one 'Yes'.

This was error because the issue submitted pertained to the applicability of the aircraft exclusion in the policy, with respect to which the defendant had burden of proof.

The foregoing erroneous instruction was highly prejudicial to complainant and was especially important in view of the fact that there were no eye-witnesses, and all the proof with respect to the issue submitted was circumstantial in nature. The prejudicial effect of this charge is demonstrated by the argument of counsel for defendant, both on his motion to withdraw the issues from the Jury and in his argument to the Jury that it was entirely speculative as to whether or not complainant's husband was riding as a passenger and that there was insufficient evidence for the Jury to properly decide the issue.

## II.

The Court erred in refusing to grant the following special request which was tendered to the Court by the complainant at the conclusion of the general charge and before the Jury retired, which was in words and figures as follows:

'Gentlemen, I instruct you with regard to the burden of proof in this case, that the complainant, Loyce Camille Curtis, has the burden of proving that her husband met his death by accident from external and violent means; the defendant, American Casualty Company, relies upon a policy exclusion which excludes accidental death from aircraft, and I instruct you that

the defendant, American Casualty Company, has the burden of proving that Jimmy Curtis' death comes within the exclusion which they rely on.'

The foregoing special requested instruction correctly stated the law, and the refusal to give the instruction was highly prejudicial since the Court gave an instruction with regard to the burden of proof which did not correctly state the law. The burden of proof was especially important in this case due to the absence of eye-witnesses or direct evidence.

## III.

The Court erred in instructing the Jury as follows:

'If you find from the greater weight or fair preponderance of the evidence that Jimmy D. Curtis was participating in the operation of the airplane in question, on the flight in which he met his death, you will answer the issue, "No." '

The foregoing instruction was erroneous because it fails to correctly state the law and was highly prejudicial because it placed an almost impossible burden upon complainant to show where there were no eye-witnesses that her husband had not participated at any point on a flight of several hours' duration, during which time there was a stop-over in Nashville.

This was further error and highly prejudicial because there was no evidence from any source that complainant's husband had participated in the operation of the airplane at any time.

This also was error for the reason that defendant admitted in its sworn answer that the issue was wheth-

er or not complainant's husband was participating in
the operation of the airplane at the time of his death,
and there was no contention that the participation dur-
ing the entire flight was an issue in the case.

## IV.

The court erred in refusing to grant complainant's
special requested instruction Number 3 which was
tendered to the Court by the complainant at the con-
clusion of the general charge and before the Jury
retired, and which was as follows:

'That the deceased, Curtis, may have had some part
in the planning of the flight and in making arrange-
ments with regard to it is, in and of itself, insuffi-
cient to render him other than a passenger at the time
of his death. You will determine his status with ref-
erence to his activities and duties as they existed at
the time of death.'

The foregoing special request correctly stated the
law and is in accord with the issues presented by the
pleadings. The failure to give the foregoing instruction
was highly prejudicial because the only evidence offer-
ed by defendant that complainant's husband had any-
thing to do with the flight was that he may have helped
to plan the flight and that the plane may have been
turned over to him initially by DeSoto Air Park. The
foregoing instruction was necessary in order to make
it clear to the jury that such preflight activities could
not constitute participation in the operation of the
airplane.

## V.

The Court erred in refusing to grant complainant's special requested instruction number 5, which was tendered to the Court by the complainant at the conclusion of the general charge and before the Jury retired, and which was as follows:

'The status of the deceased is to be determined as of the time of his death, and the determinative question is whether, at that moment, he was a passenger.'

The foregoing special request correctly states the law and is in accord with the issue made by the sworn pleadings of the defendant. The failure to give the foregoing instruction was highly prejudicial to complainant.

## VI.

The Court erred in instructing the Jury as follows:

'You are further charged that the phrase "crew member" or "member of the crew" means someone who has a part in the operation of an airplane in its flight. Simply because the airplane of the type involved in this case is not required to have a crew member, this does not mean that it cannot have a crew member as I have defined that term to you.'

This was error and was highly prejudicial to complainant because there was no issue in the case with regard to whether complainant's husband was a member of the crew, and the sole issue was whether or not he was a passenger in the aircraft. The Court expressly refused to submit an issue proposed by defendant as to whether or not complainant's husband was a member of the crew, and, therefore, this instruction

with regard to a crew member was improper and prejudicial.

This was also error because all the proof was to the effect that this airplane did not require a crew, and the language of the policy exclusion with regard to a crew member had no application.

If complainant is wrong in her contention that crew member is not an issue in the case, then complainant would show that it was error to give an instruction with regard to crew member together with an instruction that the complainant had the burden of proof with regard to the issues of fact because the term crew member only appears in the policy in the exclusionary part of the policy with respect to which it is clear that defendant should have the burden of proof.

## VII.

The Court erred in instructing the Jury as follows:

'The Defendant's theory in this cause is that Complainant's deceased husband was not riding as a passenger in a properly licensed aircraft but that on the airplane flight in which he was killed, he was participating in the operation of the plane, either as a pilot, co-pilot, or crew member as a result of which defendant is not liable to Complainant under the Policy of Insurance issued by Defendant.'

This was error because there was no issue in the case with regard to pilot, co-pilot or crew member and because the theory stated by the Court is inconsistent with the defendant's sworn answer by which the defendant is bound."

The principal contention of appellant is that she is entitled to a reversal of the decree dismissing her bill, based on the jury's verdict, because, according to her contention, the Chancellor errer in placing the burden of proof on complainant. This issue is raised by Assignments of Error I, II, and III.

Complainant's counsel argued that the question of the status of the deceased, Jimmy Curtis, as a passenger or not, was an exclusion or exception in the master policy, and that, therefore, the burden of proof on this issue should have been placed on defendant. This, of course, defendant's counsel deny. They contend that the air coverage provision of the policy is part of the insuring clauses of the policy, and not part of the exclusions, which are labeled in capital leters, "EXCLUSIONS". The policy provides:

"American Casualty Company of Reading, Pennsylvania hereby insures certain employees (hereinafter called insured persons) together with their dependents, if any, of Delta Air Lines, Inc. (hereinafter called Delta) and agrees to pay indemnity for loss of life, limbs and sight, by the insured person or a dependent covered hereunder, and resulting from injury *sustained in the manner and to the extent herein provided.* (Emphasis added)"

Following that, in Part VII of the policy, designated in capital letters, under "AIR COVERAGE", and before "EXCLUSION", appears:

"The insurance provided by the policy shall apply while the insured person * * * is riding as a passenger in a properly licensed aircraft. * * *"

The "EXCLUSIONS" of the policy follow the above quoted provision, which should, therefore, be considered part of the insuring clauses.

Counsel for complainant take the position that there is a discrepancy between the insuring clauses of the master policy and the insuring clauses in the certificate issued to complainant's husband, but we find no discrepancy. Couch on Insurance, Sec. 2110, provides as follows:

"Thus, if the exception itself is in the general clause rather than in a subsequent and distinct clause, which in effect would take out of the general clause something which otherwise would have been included in it, the plaintiff must negative the exception in order to bring his case within the policy; whereas, if the exception is separate and distinct from the general risk assumed in the general clause, it is sufficient to plead such general clause without negativing the subsequent exemption or condition."

More specifically, our Supreme Court has held in accordance with the above quoted provision from Couch on Insurance, in the case of Gilmore v. Continental Casualty Co., (1949) 188 Tenn. 588, 221 S.W.2d 814. In that case, which involved a suit on an accident insurance policy for death benefits, the general insuring clause, very much like the insuring clause of the policy involved in the case at bar, provided:

"This Policy provides Indemnity for Loss of Life, Limb, Sight, or Time resulting from Bodily Injury effected through Accidental means and for Loss of Time caused by Sickness—*to the extent herein provided.* (Emphasis supplied)."

A later provision of the policy limits the death benefit to death by accident. Complainant in that case contended that there was an ambiguity which required the court to construe it in favor of the insured, thus authorizing a recovery for death from sickness, as well as for death by accident. The court held that the language of the policy was unambiguous, and Mr. Justice Gailor, speaking for the Supreme Court, said:

"Since we hold that the policy covered death resulting from accidental injury only, the burden was on Complainant to show that death in the present case so resulted. There was no such proof." Gilmore v. Continental Casualty Co., 188 Tenn. 591, 221 S.W.2d 815.

To the same effect is Travelers Insurance Co. v. Ansley, (1939), 22 Tenn.App. 456, 124 S.W.2d 37. The policy in that case insured against death by accidental means, but contained a provisio that there must be a visible wound or contusion on the exterior of the body. This Court reversed the lower court's judgment for the plaintiff and dismissed plaintiff's suit. Judge Anderson, speaking for this Court, said:

"The clause limits the coverage and the burden was on the plaintiff to prove that the loss was within the limits thus fixed." Travelers Ins. Co. v. Ansley, 22 Tenn.App. 463, 124 S.W.2d 41.

Also, in the case of Woodard v. Interstate Life & Accident Co., (1941), 25 Tenn.App. 120, 152 S.W.2d 636, which was a suit on a limited accident insurance policy which provided that it would pay $1,000 if the insured was killed by a vehicle while walking or standing in a public highway or struck by such vehicle where a railroad crosses a public highway, and not under the influence of

liquor, this Court (Middle Section), denying recovery, speaking through Crownover, P. J., said:

"The plaintiff has been unable to carry the burden of proving, by any evidence, other than such as rests on conjecture and speculation, that this insured was standing or walking on the highway crossing, when struck, and this evidence is overcome by direct evidence of the defendant." Woodard v. Interstate Life & Accident Co., 25 Tenn.App. 124-125, 152 S.W.2d 639.

Based on the above quoted authorities, we hold that the Chancellor did not err in placing the burden of proof on complainant. In any event, regardless of whether the burden of proof was on complainant or on defendant, it is our opinion that the clear preponderance of the evidence establishes that Jimmy Curtis, complainant's husband, was not riding as a passenger in a properly licensed air craft at the time of his death. It therefore follows that even if the Chancellor was in error in placing the burden of proof on complainant and charging the jury to that effect, such error was, in our opinion, harmless error under the provisions of section 27-117 T.C.A. Assignments of Error I, II and III are, accordingly, overruled.

Complainant's Assignments of Error IV, V, VI and VII, complain either of charges by the Chancellor actually given to the jury, or of refusals of special instructions requested by complainant, all of which deal with complainant's theory that the insured, complainant's husband, was at the time of his death riding as a passenger. These are vital to complainant's case as appellant, because, under the clear and unambiguous provisions of the policy, Jimmy Curtis was covered if he was riding as a

passenger, and it is equally clear that he was not covered unless he was so riding. The issues raised by Assignments of Error IV, V, VI and VII will, therefore, be disposed of together in determining whether Jimmy Curtis was or could have been, a passenger at the time of his death. It is the theory of counsel for complainant that the question of whether or not insured was riding as a passenger must be determined as of the time of his death, or as of the time immediately before his death. This theory is untenable, because, among other reasons, it is foreclosed by the provisions of section 42-101 T.C.A., which is a part of the Uniform Aeronautics Code which has been adopted by the Legislature of Tennessee. Section 42-101, T.C.A., among the definitions therein contained, provides:

"Passenger includes any person riding in an aircraft but having no part in its operation."

Under the above definition, established by law in Tennessee, Jimmy Curtis could not have been a passenger, either at the time of his death or at any other part of the flight in which he was killed, because, at all times during that flight, he was in charge of and responsible for it. Noel Gaines, the only other person in the plane at the time of its crash, whether operating the plane or not, was only a guest. The Chancellor quite properly charged the jury with the above statutory definition of the word "passenger". Certainly, a participation in planning the flight constituted a part of its operation during that flight, which excludes complainant's husband from coverage under his policy. In this view of the situation, it is immaterial whether Jimmy Curtis, or his guest, Noel Gaines, was flying the airplane at the time of the crash.

Counsel for complainant cite and rely on the case of Vander Laan v. Educators Mutual Insurance Co., (1959), 356 Mich. 318, 97 N.W.2d 6. Inasmuch as the above cited Tennessee statute and decisions control disposition of the instant case, we deem it unnecessary to rely on authorities from other jurisdictions.

■‖ Because the Chancellor charged the jury that ''The phrase 'crew member' or 'member of the crew' means ᵤomeone who has a part in the operation of the airplane in its flight'', and to the effect that, ''Simply because the airplane of the type involved in this case is not required to have a crew member, this does not mean that it cannot have a crew member as I have defined that term to you,'' it is the contention of counsel for complainant that because the Piper Comanche plane involved in the case at bar was not required to have a crew, it was improper for the Chancellor to charge the jury with reference to any definition of ''crew member'' or ''member of the crew''. In our view of this case, the insured, Jimmy Curtis, was either the entire crew of the airplane involved in the instant case, or was, at least, in charge of the crew. If Noel Gaines be considered the crew, or a part of the crew, Jimmy Curtis was in charge, and, consequently, it was entirely proper for the Chancellor to charge the jury with reference to the definition of ''crew member'' or ''member of the crew''. In answering the question propounded to it, the jury was entitled to this charge; because, if complainant's husband was either the crew, or even a member of the crew, or in charge of the crew of the airplane involved in this cause, he could not have been riding as a passenger in that airplane.

Finally, it is our opinion that if we are wrong in holding that neither of the Assignments of Error IV, V,

VI or VII present any error of the lower court which we hold not to be error, such error, like that of whether or not defendant had the burden of proof as presented by Assignments of Error I, II and III would also constitute harmless error under the provisions of section 27-117 T.C.A. Assignments of Error IV, V, VI and VII are, accordingly, overruled.

It follows that with all appellant's assignments of error overruled, the decree of the Chancery Court of Shelby County dismissing complainant's bill in this cause must be affirmed. A decree so providing may be entered in this Court.

The costs of the cause, including both those of the lower court and those of the appeal, will be adjudged against the complainant and her sureties on the appeal bond and on the cost bond filed in the lower court.

Carney, P. J. (W.S.), and Matherne, J., concur.