IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 16, 2010

IN RE ESTATE OF BILLY JOE WALLS

Appeal from the Chancery Court for Anderson County
No. 09PB0056      William E. Lantrip, Chancellor

No. E2010-00758-COA-R3-CV - FILED NOVEMBER 29, 2010

This appeal arises out of a challenge to the trial court's subject matter jurisdiction. Upon the death of the testator, Billy Joe Walls, wills executed by him were submitted for probate in different states. Patricia Pemberton was appointed personal representative under a 2009 will admitted to probate in the trial court. Barbara Brown is the appointed personal representative under a 2007 will admitted to probate in the Circuit Court of Morgan County, Alabama. Brown initiated these proceedings by filing a complaint in the trial court[1] to contest the will submitted by Pemberton. Subsequently, Brown sought summary judgment, asserting that the trial court lacked subject matter jurisdiction. Alternatively, Brown moved to transfer the case to Alabama under the doctrine of *forum non conveniens*. The trial court dismissed Pemberton's petition on both grounds. She appeals. We affirm as to the defense of lack of subject matter jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Robert W. Wilkinson, Oak Ridge, Tennessee, for the appellant, Patricia Pemberton.

Robert W. Knolton, Oak Ridge, Tennessee, for the appellee, Barbara Brown.

**OPINION**

[1]In an effort to avoid confusion, we will refer, throughout the remainder of this opinion, to the Anderson County Chancery Court as the "trial court" and the Circuit Court of Morgan County as the "Alabama court."

I.

On February 10, 2009, Walls died of lung cancer at the age of 77. Although he died after being admitted to Parkwest Hospital in Knoxville, Walls had been living at Briarcliff Nursing Home in Oak Ridge. He had only recently come to this state, having been a long-time resident of Decatur, Alabama up until two weeks earlier, and was not in good health at the time he arrived in Tennessee.

Walls executed two wills, the first in 2007 and a second in 2009. The latter was executed on January 23, 2009, on or about the same day he traveled from Alabama to Tennessee, some two weeks before he died. Both documents were prepared by the same attorney and executed by the deceased in Alabama. They were attested to by different witnesses. Both begin with language stating that "I, Billy Joe Walls, of Morgan County, Alabama, declare this to be my will."

On February 17, 2009, Brown, a self-described "long-time companion" of Walls, who lived with him at times, submitted the 2007 will for probate in the Alabama court. The following month, Pemberton, who is Walls' stepdaughter, petitioned the trial court to admit to probate the later will. The trial court entered an order admitting the 2009 will to probate. It appointed Pemberton as the personal representative of the estate. In May 2009, Brown filed suit in the trial court to contest the 2009 will.[2] In her complaint, Brown alleged that Walls was of unsound mind when he executed the 2009 will and was a resident of Alabama at the time of his death. Pemberton denied these allegations.

In June 2009, Brown moved in the trial court to dismiss for lack of subject matter jurisdiction, and, alternatively, to transfer venue to the Alabama court as the more convenient forum for the will contest. Brown then filed a motion for summary judgment on the same two grounds. Brown essentially reasserted her position that Walls was an Alabama resident at the time of his death, and, as a consequence of this fact, the trial court was deprived of jurisdiction over the probate action instituted by Pemberton. In summary, Brown argued that

> all of the documents and material before the [trial court],
> including the two wills themselves, clearly show that [Walls]
> was a resident of the state of Alabama at the time of his death.
> There is no indication, even if [Pemberton] attempts to testify

---

[2]Brown asserts that as a result of the submission of Walls' purported later will in the trial court, the probate case in the Alabama court was suspended.

that [Walls] had 'intended' to change residence to [Tennessee],
of any overt or direct action to transfer property to the state of
Tennessee.

In opposing summary judgment, Pemberton essentially argued the opposite conclusion:

[The trial court] has jurisdiction to probate [Walls'] Last Will
and Testament. [Walls] was living in the state of Tennessee at
the time of his death. [Walls] left . . . Alabama expressing an
intention never to return. Alabama, therefore, lacks subject
matter jurisdiction.

In support of her contention that Walls had "abandoned his residency in Alabama," Pemberton relied upon her own affidavit and that of Melanie Brady, a caregiver to Walls in the weeks before he left Alabama.[3] The affidavits are generally to the effect that Walls expressed a desire to move closer to Pemberton and to leave Alabama permanently. More specifically, Pemberton stated that Walls called and requested that she come to Alabama to help him move to Tennessee, stating that he "wanted to move to Tennessee and 'never step foot' back in Alabama." Similarly, Brady stated that Walls told her "several times that he wanted to get away from [Brown,]" wanted to live closer to Pemberton, and "wanted to be far away from Alabama and never come back." Further, Walls "knew he was going to a health care facility in Tennessee, but said when his health improved he would be living closer to [Pemberton]."

In its February 26, 2010 Order of Dismissal, the trial court set forth its findings and conclusions as follows:

[T]here are no controverted material facts in dispute, and the
Court finds from such undisputed facts that [Walls] was a
resident of the state of Alabama at the time of his death, and that
his intention to move to the state of Tennessee is not enough to
change his legal residence to the state of Tennessee, without any
other action appearing on his part, and consequently, the Court
finds that it does not have subject matter jurisdiction to proceed
with the probate of the will submitted by . . . Pemberton.

---

[3]For the purpose of this appeal, we assume, without deciding, that all of this testimony would be admissible at trial.

-3-

The Court further finds that the only issues involved in the will contest, and the will contest in existence in the state of Alabama . . . is the validity of the respective wills and the competency of [Walls] in executing such wills, and therefore, with all the witnesses and a will contest proceeding now pending in . . . Alabama, it would be better for further proceedings to take place in the Alabama courts. That this Court, in the exercise of its discretion finds that the forum non conveniens is applicable and this probate matter should be dismissed also for that reason.

IT IS, THEREFORE, ADJUDGED AND DECREED, as follows:

1. That the probate proceedings filed by [Pemberton] in this Court under the purported Last Will and Testament of [Walls], be, and the same is hereby dismissed for lack of subject matter jurisdiction of this Court to probate such will.

2. That further, this probate matter should be, and it is hereby dismissed as being the inconvenient forum to proceed with the will contest filed in this probate proceeding.

(Capitalization in original.) In short, the trial court agreed with Brown's motion on both points. The instant appeal by Pemberton followed.

## II.

Pemberton presents two issues for our review:

1. Did the trial court err in granting summary judgment in favor of Brown?

2. Did the trial court err in determining that venue of the will contest action was properly transferred to the state of Alabama under the doctrine of forum non conveniens?

## III.

The purpose of summary judgment is to resolve controlling issues of law rather than to find facts or resolve disputed issues of fact. *Bellamy v. Fed. Express Corp.*, 749 S.W.2d

31, 33 (Tenn. 1988). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; ***Penley v. Honda Motor Co.***, 31 S.W.3d 181, 183 (Tenn. 2000); ***Byrd v. Hall***, 847 S.W.2d 208, 210 (Tenn. 1993). In reviewing the record, "courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." ***Staples v. CBL & Assocs., Inc.,*** 15 S.W.3d 83, 89 (Tenn. 2000). "If both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate." ***Seavers v. Methodist Med. Ctr. of Oak Ridge***, 9 S.W.3d 86, 91 (Tenn. 1999). Because this inquiry involves a question of law only, our standard of review is de novo with no presumption of correctness attached to the trial court's conclusions. *See **Mooney v. Sneed***, 30 S.W.3d 304, 306 (Tenn. 2000); ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995).

IV.

As we have noted, the trial court's ruling was based on its conclusion that it lacked subject matter jurisdiction of this probate case based on its determination that the undisputed material facts showed that Walls, as a matter of law, was a resident of Alabama when he died. Pemberton argues that in so holding, the trial court ignored evidence establishing "genuine issues of material fact regarding [Walls'] intention to establish residency in . . . Tennessee." We cannot agree with Pemberton's conclusion.

Subject matter jurisdiction concerns the authority of a particular court to hear a particular controversy. ***Meighan v. U.S. Sprint Communications***, 924 S.W.2d 632, 639 (Tenn. 1996). Courts may not adjudicate a civil claim without having jurisdiction over both the subject matter and the parties. ***Landers v. Jones***, 872 S.W.2d 674, 675 (Tenn. 1994). Tenn. Code Ann. 16-16-201(a) provides that in

> all counties where not otherwise specifically provided by public, private, special or local acts, all jurisdiction relating to the probate of wills and the administration of estates of every nature . . . is hereby vested in the chancery court of the respective counties. The chancery court in such counties shall have exclusive jurisdiction over the probate of wills and the administration of estates . . . .

"The general rule is that the Probate Court of the state in which the testator was domiciled at the time of his death has jurisdiction for the probate of his will." ***Svoboda v. Svoboda***, 61 Tenn. App. 444, 455-56; 454 S.W.2d 722, 727 (1969)(citing 57 Am.Jur. Wills,

Section 766, page 523); ***McCutchen v. Ochmig***, 60 Tenn. 390 (1872)). In explanation, it has been said that "[t]he principle is fundamental that the law of the domicil governs the distribution of the assets of a decedent." ***In re Estate of Stein***, 78 Wn. Ct. App. 251, 261, 896 P.2d 740 (1995). The Tennessee Supreme Court has long observed that in Tennessee, "[t]he court of primary probate jurisdiction is determined by residence." ***Jacobs v. Willis' Heirs***, 147 Tenn. 539, 249 S.W. 815 (1922).

In discussing the significance of one's domicile to the question of jurisdiction, this court has stated:

> One of the many relationships that are established by domicile is the location of the appropriate place to probate the will and administer the estate of a deceased person. Tenn. Code Ann. § 32-2-101 provides subject matter jurisdiction to the probate court "of the county where the testator had the testator's usual residence at the time of the testator's death." Although the statute speaks of the residence of the deceased, this statute has been consistently construed as meaning the domicile of the deceased. ***Svoboda v. Svoboda***, 61 Tenn. App. 444, 454 S.W.2d 722, 727, (Tenn. Ct. App. 1969). The Tennessee Supreme Court interpreted Tenn. Code Ann. § 32-2-101 to require that a testator must have been domiciled in Tennessee before a Tennessee court would have jurisdiction for the original probate of the testator's will. ***Svoboda***, 454 S.W.2d at 727.

***In re Estate of Price***, No. M2002-00332-COA-R3-CV, 2002 WL 31890885 at *3 (Tenn. Ct. App. M.S., filed Dec. 31, 2002).

Focusing, then, on the question of Walls' domicile, Pemberton does not dispute that Walls was a legal resident of Alabama for several years – by her account, until he came to Tennessee to live closer to her. The gist of her argument appears to be that Walls abandoned his residency in Alabama when he left with the expressed intention of relocating permanently to Tennessee, and his departure from Alabama, together with his relocation to the Tennessee nursing home creates a genuine factual dispute "regarding Walls' intention to establish residency" in Tennessee.

"Domicile" is defined as the place "where a person has his principal home and place of enjoyment of his fortunes; which he does not expect to leave, except for a purpose; from which when absent, he seems to himself a wayfarer; to which when he returns, he ceases to travel." ***Snodgrass v. Snodgrass***, 357 S.W.2d 829, 831 (1961)(quoting ***White v. White***, 3

Head 404, 40 Tenn. 404, *Tyborowski v. Tyborowski*, 28 Tenn. App. 583, 192 S. W. (2d) 231). Tennessee courts have long recognized the distinction between one's legal residence or domicile and a residence, meaning a person's place of abode. *Denny v. Sumner County*, 134 Tenn. 468, 184 S.W. 14, 16 (Tenn. 1915); *In re: Clayton*, 914 S.W.2d 84, 89 (Tenn. Ct. App. 1995). "Legal residence" is synonymous with domicile. *Bearman v. Camatsos*, 215 Tenn. 231, 385 S.W.2d 91, 93 (1964)*.* A person may have more than one residence but only one domicile, or legal residence. *Id*.; *Brown v. Brown*, 150 Tenn. 89, 261 S.W. 959 (1924). "He must have a domicile somewhere; he can have only one; therefore, "in order to lose one, he must acquire another." *Denny,* 184 S.W. at 16.

The Supreme Court has observed that "[t]he question of domicile is often a difficult one; . . . . The difficulty is intrinsic in determining, under the various combinations of circumstances, what constitutes habitancy or domicile, which, for most purposes at least, are the same. . . ." *Id*. at 17. In discussing the question in the context of determining a person's domicile for taxation purposes, the *Denny* Court stated:

> Although he might have left the commonwealth with the fixed purpose to abandon it as a residence, he did not leave it on his way to a place certain which he had determined upon as his future residence, and was proceeding to with due dispatch; and upon the general rule that, having had a domicile in this commonwealth, he remains an inhabitant for the purpose of taxation until he acquired a new domicile, the intention and fact had not concurred at the time when this tax was assessed.

> The mere intention to acquire a new domicile without the fact of an actual removal and residence avails nothing; neither does the fact of an actual removal without such intention. This intent is as essential as the fact of actual residence. A mere change in the place of abode, though more than temporary, is not sufficient, unless the intent concur.

> This intention, it is true, may be inferred from circumstances, and the residence may be of such a character and accompanied by such indices of a permanent home that the law will apply to the facts a result contrary to the actual intention of the party. Thus one cannot make a permanent, fixed commercial residence with all the surroundings of a permanent home in one place and a domicile in another by a mere mental act. But a residence for

mere pleasure or health is not regarded as of any great weight in determining the question of a change of domicile.

In such case he does not lose his former domicile so long as his intention remains conditional, as, for example, where he may seek employment, intending to change his permanent home only if he finds it.

*Id*. (Internal citations omitted.) Further guidance on the question is found in the following language:

A domicile once acquired remains one's domicile until another is established; and one's domicile is not established by the mere act of abiding at a particular place for a specific purpose, with no present intention of making it a permanent home.

***Bruce v. Bruce***, 32 Tenn. Ct. App. 222, 226, 222 S.W.2d 228, 230 (Tenn. Ct. App. 1949).

To establish a change from one's domicile to another domicile of choice, three things are essential: "(a) Actual residence in the other or new place; (b) an intention to abandon the old domicile; and (c) an intention of acquiring a new one at the other place." ***Denny***, 184 S.W. at 16. "Although intent alone is not sufficient to establish domicile, intent plus some type of action is sufficient." ***Svoboda***, 454 S.W.2d at 727; ***Tyborowski***, 192 S.W.2d at 233.

***Svoboda*** involved an appeal from the denial of a petition to probate a will in Tennessee upon the trial court's finding that the testator, Mrs. Svoboda, was a resident of Kansas, not Tennessee, at the time of her death. In affirming the holding, this Court examined Mrs. Svoboda's conduct and statement and concluded that she never carried out her intention to transfer her domicile from Kansas to Tennessee. The facts showed that although she had lived in Kansas for many years, Mrs. Svoboda took certain steps toward making Tennessee her new home. After she and her husband separated, Mrs. Svoboda continued to live in her home in Kansas, but often visited a daughter who lived in Memphis. The landlord invited Mrs. Svoboda to live in the home where her daughter rented a room, and at one point after a visit, she returned to Kansas "for the avowed purpose of selling her home and coming back to Memphis to live permanently." *Id*. at 725.

Mrs. Svoboda in fact sold her home, but stored its contents and most of her clothing and personal belongings in Kansas. Mrs. Svoboda became ill and endured a lengthy hospitalization in Kansas. On her release, she again returned to live in the house where her daughter lived in Memphis. She changed the mailing address for her social security checks

-8-

to her Memphis address and her daughter paid for her additional living expenses. She brought with her only clothing and personal items and a box containing important personal records. At the same time, she left open her bank account in Kansas and never changed her voter registration from that state. She joined a church in Memphis and was a member there when she died. When Mrs. Svoboda returned to Kansas to visit her dying mother and to attend a relative's birthday there, she again became ill. Her condition worsened and she was hospitalized in various Kansas hospitals. On her release, she lived in a room in the home of her husband for a short time before she was again hospitalized and died. Her death certificate reflected that she was a resident of Kansas. One hospital listed her address in Kansas, the other at the home where she lived in Memphis. *Id*. at 725-26.

On these facts, the Court agreed that Mrs. Svoboda's domicile remained in Kansas when she died. We quote extensively from the court's analysis:

> In the case of ***Caldwell v. Shelton***, 1948, 32 Tenn.App. 45, 221 S.W.2d 815, this court held that words in a similar document executed under similar circumstances did not prove a change of domicile. In that case Miss Helen Shelton of Waco, Texas, had brought her mother to Jackson, Tennessee, for burial. Miss Shelton herself became seriously ill and died of a malignancy within less than two months after she came to Jackson, Tennessee, from Waco, Texas. She told associates on the day of the death of her mother that she did not intend to go back to Waco, Texas, but "* * * She had come to Tennessee to spend the rest of her life * * *." At the time of her death Miss Shelton was on leave of absence from her employment in Waco, Texas, and during her illness wrote to her employer asking for an extension of her leave of absence. This court held that the most that could be said of the evidence was that the decedent's intention was to live in Jackson, Tennessee, providing she could obtain employment there or that she intended to return to Waco and continue her work until she could obtain a pension. This court reversed the action of the Chancellor in holding that the domicile of the decedent was in Jackson, Tennessee, at the time of her death.
>
> From ***Caldwell v. Shelton*** we quote as follows:

In the case of **Brown v. Hows**, 163 Tenn. 178, 42 S.W.2d 210, 212, opinion by Chief Justice Green, it is said:

Indeed, we are of the opinion that a bare intent to make a particular place one's residence is not sufficient to establish a domicile. There must be some appropriate action harmonizing with the intent.

It is well settled that to effect a change of domicile there must be both the intention to do so and the actual taking of some steps to carry out that intention.

Also in the case of **Sparks v. Sparks**, 114 Tenn. 666, 669, 88 S.W. 173, 174, it is said:

In determining whether or not a change of domicile has been made, it is proper to consider along with the statement of the party of his intent in the matter, his conduct and declarations, and all other facts that throw light upon the subject.

*   *   *

On the authority of **Caldwell v. Shelton** we hold that the evidence in the present case does not preponderate against the finding of the lower court that Mrs. Svoboda never took any steps to carry out her intention to change her domicile from Kansas to Tennessee.

The fact that Mrs. Svoboda had not sold but only stored her furniture, household goods, china and much of her clothing and had never made any effort to have it brought to Memphis is a strong circumstance that Mrs. Svoboda never decided as a finality that Memphis would be her home permanently even though she had told friends that she intended to make Memphis her home. The transfer of her domicile was not complete.

-10-

*Svoboda*, 454 S.W.2d at 726-27.

In the summary judgment analysis, the starting point is the material upon which the moving party relies to support its request for judgment "on the papers." *See McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998). It is only after the movant satisfies its burden that the obligation of the non-moving party to demonstrate a genuine issue of material fact is triggered. *Id*. at 588-89.

There is clearly a genuine issue of material fact in this case with respect to the issue of whether the deceased *intended* to change his domicile from Alabama to Tennessee; but that is only one of two factors that must be examined. It is clear from the cases that, in addition to *intent*, there must be "the actual taking of some steps to carry out that intention." *Brown*, 42 S.W.2d at 212. The facts before us do not make out a genuine issue of material fact on this second element. On the contrary, the facts relied upon by Brown in support of her motion for summary judgment negate Pemberton's assertion that "some steps to carry out that intention," *see id*, were shown in this record. While Pemberton was successful in creating a genuine issue of material fact as to *intent*, the facts shown by her do not create a genuine issue on the "some steps to carry out that intention" issue.

We conclude that the domicile, or legal residence, of Walls was as a matter of law in the state of Alabama at the time of his death. The fact of Walls' presence in Tennessee at his death is undisputed. In our view, however, his intent to establish a new legal residence, *i.e.*, a new domicile, in Tennessee, was never carried out. Stated differently, Walls checked into a nursing facility in Tennessee, thereby establishing an actual residence in this state. But once here, he took no steps in furtherance of his declared intention to abandon his domicile in Alabama and establish a new one here.

The following is clear: (1) the deceased had lived in Alabama since 2003; (2) before coming to Tennessee in late January 2009, he lived in a house he owned in Decatur, Alabama; (3) the deceased died some 18 days after he came to Tennessee; (4) when the deceased came to Tennessee, he brought with him, according to Pemberton, only "his clothes and household items that he could use in assisted living"; (5) the deceased, according to Brown, "maintained ownership of his residence, accounts and assets" in Alabama; (6) he had an Alabama driver's license, albeit an expired one; and (7) the deceased executed two wills in Alabama, both of which were prepared by an Alabama attorney and each of which stated that the deceased was "of Morgan County, Alabama" – the last of these two wills being executed on the day he left Alabama to come to Tennessee.

Mindful that mere intention, without more, is not enough to change one's domicile, we think the evidence shows only that Walls changed his residence, or place of abode, to a

nursing home in Tennessee to be closer to Pemberton and nothing more. In summary, taking all of the evidence and reasonable inferences therefrom in the light most favorable to Pemberton, as did the trial court, a reasonable person could only reach the conclusion that Walls remained a legal resident of Alabama at his death. In other words, he had a new residence in Tennessee but his domicile was in Alabama.

It necessarily follows that the trial court was without jurisdiction of the probate case instituted by Pemberton. On this basis, the trial court appropriately granted Brown summary judgment.

## V.

As an alternative ground for dismissal of the probate case, the trial court relied upon the doctrine of forum non conveniens. "Generally speaking, forum non conveniens deals with the discretionary power of the court to decline to exercise a possessed jurisdiction whenever, because of varying factors, it appears that the controversy may be more suitably or conveniently tried elsewhere." *Zurick v. Inman*, 221 Tenn. 393, 396, 426 S.W.2d 767 (1968)(quoting *Cotton v. Louisville & Nashville R.R. Co.*, 14 Ill.2d 144, 152 N.E.2d 385, 388 (1958)). By its own terms, however, application of the doctrine "of course, presupposes the court has both personal and subject-matter jurisdiction." *Cornish v. Harrah's Entm't, Inc.*, No. W2007-00782-COA-R3-CV, 2008 WL 1948030 at *3 (Tenn. Ct. App. M.S., filed May 6, 2008). Having determined that subject-matter jurisdiction is lacking in the present case, we must conclude that the doctrine is inapplicable. Accordingly, the trial court erroneously relied on it in this case.

## VI.

The judgment of the trial court is affirmed as to the defense of lack of subject matter jurisdiction. This case is remanded to the trial court, pursuant to applicable law, for the collection of costs assessed below. Costs on appeal are taxed to the appellant, Patricia Pemberton.

_____
CHARLES D. SUSANO, JR., JUDGE