HERMAN J. SEELEY, Plaintiff,

*v.*

PILOT FIRE & CASUALTY COMPANY, Defendant.

432 S.W.2d 58

(*Jackson*, April Term, 1968.)

Opinion filed August 15, 1968.

34

Bernie Mullikin, Jr., Memphis, for plaintiff in error, Cochran, Carey, Fleischer & Mullikin, Memphis, of counsel.

Frierson M. Graves, Jr., Memphis, for defendant in error, Heiskell, Donelson, Adams, Williams & Wall, Memphis, of counsel.

Mr. Special Justice James D. Senter, Jr. delivered the opinion of the Court.

This suit originated in the Circuit Court of Shelby County, Tennessee. We are referring to the parties according to their status below; that is, Herman J. Seeley as plaintiff, and Pilot Fire & Casualty Company as defendant. Plaintiff seeks to recover from defendant certain medical expenses incurred by him in the amount of $700.00 pursuant to a certain Family Combination Automobile Policy issued to plaintiff by defendant; and to recover the statutory penalty for refusal to pay. The trial court sustained defendant's demurrer to the amended declaration, and plaintiff appealed.

Of the three Assignments of Error filed by plaintiff, the first two raise the question that the demurrer was waived by an advance step in the pleadings and that the subject demurrer is not a credible pleading. It is therefore appropriate to review the pleadings, both the sequence and format.

To the original declaration defendant filed a demurrer which states briefly that the declaration is not sufficient in law because it does not allege an injury "caused by accident" and there is no coverage within the terms of the policy. Plaintiff then obtained leave to amend his declaration, the amended declaration describing with more specificness how plaintiff was injured. To the amended declaration defendant filed a pleading entitled "DEMURRER AND ANSWER TO DECLARATION AS AMENDED". The first portion of the conjoined pleading constitutes a demurrer and the latter portion an answer. It is filed as one document. The plaintiff thereupon filed a replication to the demurrer and answer and joined issue thereon. The court sustained the demurrer to the amended declaration and dismissed the suit. In this Order it is recited that "This cause came on to be

heard on the Demurrer to the Declaration as Amended, upon statement of counsel, Memorandum Brief submitted and upon the entire record,—". The transcript contains a "Memorandum on Demurrer of Defendant" filed by counsel for plaintiff.

The first two Assignments charge that the Court erred:

"1. In not overruling the demurrer in that at law a demurrer cannot be pleaded at the same time as a plea to the merits, the advance step in pleading having the effect of waiving and overruling the demurrer.

2. In not overruling the demurrer as there is no credible pleadings to sustain such a ruling."

By his first Assignment, plaintiff insists that since the answer of defendant was filed simultaneously with his demurrer, both being incorporated in the one document of pleading, this constituted an advance step in pleading and effectively waived the demurrer.

"This is the order of pleading existing at the common law, and it should be observed because an advance step in pleading waives all defenses which should be antecedently made." Caruthers History of a Lawsuit, 7th Ed. P. 210, Sec. 169.

We agree that this is the recognized rule in Tennessee, and had the plaintiff raised this question in the court below we assume that the trial court would have sustained his position. However, we also think that the right to raise this defense to the demurrer can be waived, as can the right to question the regularity of any other pleading. (*Wilson v. Eifler*, 47 Tenn. 31). A review of this Record has convinced us that the question of advance pleading was not raised in the court below. The only written re-

sponse to the demurrer and the amended declaration is the replication filed by plaintiff on May 23, 1967. On the same day plaintiff filed a "Memorandum on Demurrer of Defendant". This is a Brief containing citations of authorities and argument on the matters raised by the demurrer. This Memorandum was, seemingly without objection, included in the transcript.

On May 26, 1968, the demurrer was heard by the trial judge "upon statement of counsel, Memorandum Brief submitted and upon the entire record". The Memorandum Brief nowhere suggests that the demurrer is being challenged because filed with an answer, but does argue in detail the legal questions raised by the demurrer. We think it is clear that the trial court was led or permitted to assume that the technical question was being waived and that both parties were amenable to a disposition of the demurrer upon its merits. In this situation the following statement should govern:

> "The reason for the rule is that a party shall not allow the trial court to fall into error inadvertantly, but to require that the attention of the court be specifically directed to the exact point involved." Caruthers History of a Lawsuit. 8th Ed. Sec. 205, P. 252.

Our conclusions apply also to the second Assignment of Error and it results that the first two Assignments are overruled.

The third Assignment of Error contends that the court erred in sustaining the demurrer since the allegations in the declaration set out a question of fact as to whether or not the injuries were "caused by accident" within the meaning of the automobile insurance policy.

The amended declaration alleges in so many words that the injuries received by plaintiff were "caused by accident" and alleges that the plaintiff received a lumbar strain as he was entering his pickup truck. It further alleges that the medical expenses "were incurred by treatment of injuries arising out of an accident which occurred on January 3, 1967 when the plaintiff was entering and occupying said vehicle and in entering his vehicle, he stepped from the ground into the vehicle without stepping on the running board, in this manner twisting his back which resulted in his being hospitalized and incurring the approximate sum of $700.00 in medical expenses." The insurance policy that is the subject of this suit is reproduced in full in the transcript. The pertinent provisions of this policy as set forth in the declaration of plaintiff are as follows:

"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

Division 1. To or for named insured and each relative who sustains bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', caused by accident (a) while occupying the owner automobile etc. * * *"

Definitions: Occupying means in or upon, or entering, or alighting from."

Since the policy defines occupying as meaning "in or upon, or entering or alighting from" such vehicle, the only question is whether or not, as a matter of law, the allegations in the declaration sufficiently allege that the

injury was caused by accident. The word "accident" is not defined in the policy. We must therefore determine whether or not an injury resulting from a person twisting his back while stepping from the ground into a vehicle without using the intermediate platform of the running board can be described as an injury caused by accident under the terms of the policy.

In seeking to find the intention of the parties to a contract, words in the contract, unless otherwise defined, will be given their usual and ordinary meaning. *Hahn v. Home Life Insurance Company,* 169 Tenn. 232, 237, 84 S.W.2d 361; *Pacific Mutual Life Insurance Company v. Hobbs,* 168 Tenn. 690, 80 S.W.2d 662, 663. In this policy the key words are "* * * who sustains bodily injury * * * caused by accident", and the question is how the insurer and the insured should reasonably have interpreted and understood these words, giving them their ordinary meaning.

We find no case in Tennessee defining these particular words in the context of the medical coverage provisions of an automobile liability policy. There are a number of decisions, however, in cases which required a definition and construction of the language frequently used in general accident insurance policies and which provide payment or indemnity for bodily injury or death *resulting solely through external, violent, and accidental means.* It will be noted that in these cases the emphasis is placed on the words "accidental means", rather than on the words "violent" and "external". In view of the basic similarity of facts, the conclusions and decisions in those cases can be guiding beacons in this case, if we can equate the words "bodily injury * * * caused by accident" with

the words "bodily injury * * * resulting through * * * accidental means". We think the meaning and intendment of these provisions are intrinsically the same, that an injury "resulting through accidental means" was "caused by accident", and that these terms could properly be used interchangeably.

Webster's Unabridged Dictionary supplies these definitions, among others:

*Means*—"a measure or measures employed to effect a purpose."

*Cause*—"that which produces an effect."

So in the instant case, plaintiff's injury was *caused* by the *means* he employed to enter his pickup truck—stepping from ground to vehicle without using the running board.

The Tennessee decisions on this question make a controlling distinction between "accidental means" and "accidental results". *Scott v. Metropolitan Life Insurance Company,* 169 Tenn. 351, 87 S.W.2d 1011; *Rollins v. Life & Casualty Insurance Company of Tennessee,* 190 Tenn. 89, 228 S.W.2d 70; *Stone v. Fidelity and Casualty Company,* 133 Tenn. 672, 182 S.W.2d 252, L.R.A.1916D 536; *Provident Life & Accident Insurance Company v. Wallace,* 23 Tenn.App. 697, 137 S.W.2d 888. Typical are the cases of *Scott v. Metropolitan Life Insurance Company,* supra; and *Provident Life & Accident Insurance Company v. Wallace,* supra.

In the *Scott* case the insured died as the result of a sun stroke and a fall while he was firing a boiler. Suit was brought for the additional indemnity provided if the insured's death resulted "solely through external, violent,

and accidental means''. The insured's exposure was voluntary and there were no intervening factors. In affirming the action of the trial court sustaining a demurrer, Mr. Chief Justice Green noted:

> "Nor is there any averment that the insured's exposure to the means—his firing the boiler—was anything but an intentional act."

The Court then quoted as follows from *Stone v. Fidelity and Casualty Company,* supra:

> "The general rule is that an injury is not produced by accidental means, within the meaning of this policy, where the injury is a natural result of an act or acts in which the insured intentionally engages. A person may do certain acts the result of which produces unforeseen consequences resulting in what is termed an accident; yet it does not come within the terms of this contract. The policy does not insure against an injury that may be caused by a voluntary, natural, ordinary movement, executed exactly as was intended.
>
> Therefore, to determine the matter, we look, not to the result merely, but to the means producing the result. It is not sufficient that the injury be unusual and unexpected, but the *cause* itself must have been unexpected and accidental." (Emphasis supplied).

A conscious and voluntary act results in an injury in *Provident Life & Accident Insurance Company v. Wallace,* supra. The insured's car would not start and the insured started pushing it from the rear to start it, knowing that to engage the motor the car must be left in gear and this would require more effort and strain on his part. Because of this effort and strain, a hernia developed. The Court held that he could not recover under a policy

offering benefits for bodily injury "sustained solely through external, violent, and accidental means," saying:

"It is not insisted that he slipped, or that the car bumped into him or that anything unexpectedly happened to him other than the injury. He intended to push the car in order to start it, and to do so the car must be in gear requiring force to turn over the engine. He was conscious of the strain he was voluntarily exerting and necessarily anticipated the strain, but of course, he did not expect a hernia to result from the strain; the only unforeseen and unexpected thing that happened was the rupture, which naturally resulted from the excessive strain voluntarily exerted."

and

"Upon this state of facts, under the rules adopted in this state, the court is of the opinion that the injury which was effected was not caused solely through external, violent, and accidental means. And this being true, the policy did not cover the injury and the plaintiff was not entitled to a recovery."

The above case follows the majority rule announced in the annotation found in 55 A.L.R.2d, 1186. This same rule is followed in the majority of the states. The Supreme Court of Louisiana uses this language:

"Unless there is an accidental element in the act which precedes and causes the injury, there can be no recovery under a policy which insures only against injuries caused by accidental means." *Parker v. Provident Accident & Insurance Company,* 178 La. 977, 152 So. 583.

This same principle is found in the following definition (among others) of "accident" in Black's Law Dictionary, Fourth Edition.

"* * * any unexpected personal injury resulting from any unlooked for mishap or occurrence."

The texts also support this principle:

"Definitions of the terms "accident" and "accidental means" include the idea that the means as well as the result must be unforeseen, involuntary, unexpected, and unusual, and that it must be a happening by chance." Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, Part 2, Perm.Ed. Sec. 4125, p. 372.

■ Testing the allegations in plaintiff's amended declaration in the light of the above holdings and authorities, it is clear that plaintiff, in entering his vehicle, decided to forego the use of the running board as an intermediate step, and purposely took the higher step from ground to floorboard. This additional strain and effort caused the twisting of the back and the injury that prompted this suit. We find nowhere in plaintiff's allegations any hint or inference that anything untoward, unforeseen, unexpected or fortuitous happened, except the injury. He does not claim that his foot slipped, or that he accidentally failed to see or missed the running board, or that there was any other intervening factor. Under these circumstances there can be no doubt that only the result, the injury, was accidental, and that plaintiff's injury was not "caused by accident".

We have carefully examined the authorities submitted by plaintiff, and have been forced to conclude that they do not govern under the circumstances existing in the instant case. Nor can this case be brought within the more liberal ambit of Workmen's Compensation cases. Particular interpretations of the Workmen's Compensa-

tion Act and the words used therein have been impelled by the purposes underlying this statutory field of compensation for industrial injuries or disease. In *Scott v. Metropolitan Insurance Company*, supra, the Court said:

"The decisions in Workmen's Compensation cases may be left out of consideration. Under that statute, the employer is liable for injuries from accidents to employees arising out of and in the course of their employment. The statute is concerned to afford protection against accidental results. In the sense of the statute, broadly speaking, the employment itself is the means of the accident, and the employment, of course, is never accidental."

As indicated above, we agree with the trial judge. The Third Assignment of Error is also overruled, the action of the trial court in sustaining the demurrer is affirmed, and the suit will be dismissed at the cost of plaintiff.

BURNETT, CHIEF JUSTICE, and CRESON, DYER, and HUMPHREYS, JUSTICES, concur.