Kearney D. SPEARS, Plaintiff/Appellant,

v.

COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY and Provident Life & Accident Insurance Company, Defendants/Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

May 12, 1993.

Application for Permission to Appeal Denied by Supreme Court Oct. 4, 1993.

James D. Causey, Memphis, for plaintiff/appellant.

B.J. Wade and Lori J. Keen, Glassman, Jeter, Edwards & Wade, P.C., Memphis, for defendant Commercial Life.

Prince C. Chambliss, Jr., Memphis, for defendant Provident Life.

TOMLIN, Presiding Judge, Western Section.

Kearney D. Spears ("plaintiff") brought this action in the Circuit Court of Shelby County against Commercial Insurance Company of Newark, New Jersey ("Commercial") and Provident Life & Accident Insurance Company ("Provident") to recover disability benefits allegedly due under a policy issued by each defendant. Both Commercial and Provident filed motions for summary judgment contending that coverage was not provided by its policy for plaintiff's claims. The trial court granted both summary judgment motions. On appeal, the dispositive issue is whether the trial court erred in granting summary judgment for both defendants. For the reasons hereafter stated, we affirm the action of the trial court as to Commercial. As to Provident, we reverse the order granting summary judgment and remand for a trial on the merits.

The same set of facts serves as a basis for plaintiff's claims against each defendant. However, the provisions of each policy are different and therefore produce different results. Accordingly, we shall lay out the basic pertinent facts and then examine the action of the trial court as to each defendant's policy.

Plaintiff experienced back problems as early as 1943, when, while unloading a ship during World War II as a serviceman, he felt sudden pain in his back. He was not disabled as a result of this incident, nor did he receive any medical treatment. The pain that he sustained went away shortly after its onset. Following the war, plaintiff attended college and dental school and began the practice of dentistry in 1956. He experienced no problems with his back until 1978. On an occasion in that year, plaintiff was raking grass clippings in his yard when he bent over and reached down for a bag on the ground. He felt a sudden pain in his back and was unable to straighten up. He stated that from that incident until the time of this litigation, he experienced back pain continuously.

In August, 1982, while working at his desk in his dental office, plaintiff re-injured his back. On this occasion he accidentally knocked a piece of paper off his desk and, as he put it, "inadvertently without thinking grabbed for it." In May, 1983, plaintiff again injured his back while engaged in his practice. He was sitting on a stool, when he turned around to pick up a patient's record hanging on the wall. At that time he felt a pain in his back. In September of that year, plaintiff sold his dental practice because he was unable to practice due to severe back pain.

In the case under consideration, each policy contains separate benefit provisions depending upon whether plaintiff's disability is due to accident or sickness. Each policy provides that if the total disability of the plaintiff is due to sickness, benefits will be paid monthly until he attains the age of 65. However, under the accident provisions of each policy, if plaintiff is found to be totally disabled, benefits will be paid for the remainder of his life.

Both Commercial and Provident paid disability benefits to plaintiff under the sickness provisions of their respective policies until the time of plaintiff's 65th birthday. At this time, both Commercial and Provident ceased paying benefits to plaintiff, contending he was not entitled to benefits for the balance of his life because his disability did not qualify for payments under the accident provisions of their respective policies.

Plaintiff brought this suit to recover monthly benefits for the remainder of his life from both Commercial and Provident, alleging that his disability resulted from an accidental injury. Plaintiff's original complaint alleged that he sustained an injury only on or about May 9 1983. Commercial filed its answer, followed by a motion for summary judgment. The trial court granted Commercial's motion, finding that plaintiff's alleged injury of May 9, 1983 was not "caused by accident" within the terms of Commercial's policy. However, the court granted plaintiff additional time to amend his complaint so as to set forth additional facts in an effort to state a claim for an injury "caused by an

accident" within the meaning of Commercial's policy.

Plaintiff filed an amended complaint in which he alleged that on or about August 15, 1982, while doing paperwork at his desk, he inadvertently knocked off a piece of paper from his desk, and "reflexively and without premeditation" grabbed for it as it was falling to the floor. This, he asserts, caused or contributed to the total disability which now prevents him from practicing dentistry.

Commercial filed a second motion for summary judgment on the grounds that there were no genuine issues of material fact and that it was entitled to a judgment as a matter of law. Provident filed its first motion for summary judgment about the same time. The trial court granted Commercial's motion, holding that plaintiff was not "wholly and continuously disabled" by the 1982 incident as required by Commercial's policy. It likewise granted Provident's motion for summary judgment on the ground that the alleged injuries of 1982 and 1983 were not "accidental" within the meaning of Provident's policy. The trial court also found that the term "accidental bodily injury" as used in Provident's policy should be interpreted as "injury caused by accident."

■ In ruling on motions for summary judgment, both the trial court and this court must consider the matter in the same manner as a motion for a directed verdict made at the close of plaintiff's proof: i.e., we must view all affidavits and depositions in the light most favorable to the opponent of the motion, and draw all legitimate conclusions of fact therefrom in their favor. If, after so doing, a disputed issue of material fact is made out, the motion must be denied. *Stone v. Hinds,* 541 S.W.2d 598 (Tenn.App.1976).

## I. *THE COMMERCIAL POLICY*

■ At all times during the evolution of this claim Commercial's policy contained the following provisions pertinent to the case under consideration:

Accident Indemnity for Total Disability, as provided by Part II–A of the policy, shall be amended to read—"When injury, commencing while the policy is in force as to the Insured, wholly and continuously disables and prevents the Insured from performing the duties of his profession or occupation, the Company will pay the Monthly Indemnity ... for the period the Insured shall be so disabled.... [T]he Company will continue the payment of Indemnity so long as the Insured shall live and be *wholly and continuously disabled* by reason of such injury from performing the duties of any gainful occupation for which he is reasonably fitted.

The policy also contains the following definitions:

"Injury" whenever used in the policy means *bodily injury caused by an accident* occurring while the policy is in force as to the Insured. "Sickness" whenever used in the policy means sickness or disease which causes total disability commencing while the policy is in force as to the Insured.

(Emphasis added).

Many years ago our Supreme Court recognized the distinction between "accidental means" and "accidental results" as those terms are used in insurance policies. In *Stone v. Fidelity & Casualty Co. of New York,* 133 Tenn. 672, 182 S.W. 252 (1916), the court stated:

The general rule is that an injury is not produced by accidental means, within the meaning of this policy, where the injury is the natural result of an act or acts in which the insured intentionally engages. A person may do certain acts the result of which produces unforeseen consequences resulting in what is termed an accident; yet it does not come within the terms of this contract. The policy does not insure against an injury that may be caused by a voluntary, natural, ordinary movement, executed exactly as was intended.

Therefore, to determine the matter, we look, not to the result merely, but to the means producing the result. It is not sufficient that the injury be unusual and unexpected, but the cause itself must have been unexpected and accidental.

*Id.*

In *Stone,* plaintiff ruptured the retina of his left eye when he raised a newspaper above

his head while lying in bed. The court held that he had not sustained an injury by accidental means as the movement producing the injury was executed exactly as he intended. The court said "while the result was not foreseen, the causes producing that result were not accidental." *Id.* at 253.

In *Seeley v. Pilot Fire & Casualty Co.*, 222 Tenn. 33, 432 S.W.2d 58 (1968), this same distinction was again made. The insurance policy under consideration in *Seeley* provided coverage for "bodily injury, caused by accident (a) while occupying the owner automobile...." *Id.* at 60. The insured strained his back when he stepped from the ground into the truck without stepping on the running board, thereby twisting his back.

The court pointed out that there were no Tennessee cases construing the term "injury caused by accident," but recognized the similarity between the terms "accidental means" and "injury caused by accident." The court held that the terms were interchangeable and ruled that plaintiff's injuries were not caused by accident as his actions in stepping directly to the floorboard of the truck were intentional and voluntary. It stated:

> We find nowhere in plaintiff's allegations any hint or inference that anything untoward, unforeseen, unexpected or fortuitous happened, except the injury. He does not claim that his foot slipped, or that he accidentally failed to see or missed the running board, or that there was any other intervening factor. Under these circumstances there can be no doubt that only the result, the injury, was accidental, and that plaintiff's injury was not "caused by accident."

*Id.* at 62.

In the case under consideration, plaintiff does not allege that his 1983 injury was the result of an unexpected or unforeseen occurrence. Rather, he testified that this injury took place when he intentionally and voluntarily turned around while sitting on a stool and reached for a patient's chart hanging on the wall. It was a natural movement with an unforeseen result.

■ Plaintiff contends that the technical distinction made in *Stone* and *Seeley* is contrary to the understanding of the average person purchasing a policy of insurance. However, it is the duty of the courts to enforce an insurance policy as written. While ambiguities should be construed in favor of the insured, where there is no ambiguity neither party is to be favored. *Beef N' Bird of America, Inc. v. Continental Cas. Co.*, 803 S.W.2d 234, 237 (Tenn.App.1990). This court is not at liberty to rewrite policies of insurance to provide coverage where no coverage was intended. This issue is without merit.

■ Commercial's second motion for summary judgment was on the ground that the 1982 injury did not wholly and continuously disable plaintiff from performing the duties of his profession as required by the policy. In regard to this injury, plaintiff testified as follows:

Q: You claim you suffered an injury to your back in August, 1982; is that correct?

A: Yes.

Q: And how long were you off work as a result of that injury in August, 1982?

A: About three weeks.

Q: So you would have returned to work some time in September of 1982?

A: Yes, probably.

Q: And of course you returned to your job as a dentist; is that correct?

A: Yes.

Q: Did you work as a dentist up until the incident in May, 1983?

A: Yes, I did.

Q: And I believe in May, 1983 you injured your back again; is that correct?

A: Yes, uh-huh.

Q: After the May, 1983 incident did you return to work?

A: Tried to.

Q: Didn't work out?

A: Couldn't.

Q: You ended up selling your practice in September, 1983?

A: Right.

Q: Haven't worked since September, 1983?

A: No, I have not.

Q: Did you apply for disability insurance benefits with my client, Commercial Insurance Company, between August, 1982 incident and the May, 1983 incident when you hurt your back?

A: No, I did not.

In *Allen v. The Paul Revere Life Ins. Co.*, 57 Tenn.App. 650, 423 S.W.2d 504 (1967), the eastern section of this Court stated:

Generally, and it is a common-sense application of the policy provisions, "where an accident policy includes the element of continuity and undertakes to insure only for loss resulting from injuries that 'continuously' disable insured, the word 'continuously' means regularly, protracted, enduring, and without any substantial interruption of sequence, as distinguished from irregularly, spasmodically, intermittently or occasionally.... Thus, under such a policy, the continuity of the disability is not broken by the fact that insured returns to his work at long intervals, and for only short periods, while still suffering from the injury; *but the continuity is broken where insured for protracted periods after the injury performs his regular duties.*

*Id.* at 508 (emphasis added).

Plaintiff's testimony established unequivocally that following the 1982 incident he returned to work and worked continuously for approximately nine months before re-injuring his back in May, 1983. Under this state of uncontroverted facts there is no coverage under Commercial's policy.

■ Plaintiff also contends that Commercial waived its defense to the effect that plaintiff had not suffered an injury caused by accident. Plaintiff bases this contention on a letter sent to plaintiff by Commercial prior to this suit. In this letter, Commercial advised plaintiff that it would not be paying lifetime benefits under the accident provision of the policy because "his back injury occurred in 1943 prior to the effective date of [the] policy and not while the policy is in force." It is plaintiff's assertion that this is inconsistent with the position taken by Commercial in this litigation—that the injuries complained of in plaintiff's complaint were not caused by accidental means.

■ The party alleging waiver must show how he has been prejudiced by any change of position. *Prudential Insurance Co. of America v. Falls*, 169 Tenn. 324, 87 S.W.2d 567, 569 (1935). While we have serious doubts as to whether there has been any change of position by Commercial, there has been no showing by plaintiff how he has been prejudiced by Commercial's alleged "change of position." This argument is likewise without merit.

## II. THE PROVIDENT POLICY

The provisions of the Provident policy providing coverage for total disability benefits read as follows:

**Provident Life and Accident Insurance Company** Hereby insures the person named herein as the Insured, subject to the exceptions and other provisions herein contained, against loss covered by this policy commencing while it is in force and resulting from: (1) *accidental bodily injuries* occurring while this policy is in force, hereinafter referred to as Injuries;

．　　．　　．　　．　　．

Maximum Benefit Periods

Total Disability—Accident ＿＿＿ Lifetime

．　　．　　．　　．　　．

TOTAL DISABILITY—ACCIDENT: If injuries shall result in total disability of the Insured, the Company will pay periodically during the continuance of such total disability, indemnity at the rate of the Monthly Benefit for Total Disability beginning on the day benefits for accident commence as shown in the Policy Schedule, but indemnity will not be paid beyond the applicable Maximum Benefit Period during a period of disability.

It will be recalled that the trial court, in granting summary judgment, held that the term "accidental bodily injury" as it appeared in Provident's policy should be interpreted as "injury caused by accident." There is no definition of the term "accident" in Provident's policy, nor is there any requirement that the means or the cause of the

injury be accidental in order for there to be coverage.

In construing contracts of insurance, this court is obliged to attempt to determine the intent of the contracting parties and, as the policy was drafted by the insurance company, we must resolve any ambiguity and doubt in favor of the insured. *Palmer v. State Farm Mut. Auto. Ins. Co.*, 614 S.W.2d 788, 789 (Tenn.1981). Furthermore, where the language of an insurance policy is reasonably susceptible of two meanings, we are obliged to give the particular language the interpretation most favorable to the insured. *Monroe County Motor Co. v. Tennessee Odin Ins. Co.*, 33 Tenn.App. 223, 231 S.W.2d 386, 395 (1950).

We have found no cases from this jurisdiction interpreting the phrase "accidental bodily injury." However, we have found several cases from other jurisdictions that have assisted us in reaching the conclusion that we reach. *Kearbey v. The Reliable Ins. Co. of Webster Groves*, 526 S.W.2d 866 (Mo. App.1975), was an action by a surviving spouse for the accidental death benefit in an insurance policy issued by defendant on plaintiff's deceased wife. Decedent's autopsy revealed that death was due to the combined effects of alcohol and butabarbitol in the body. It was undetermined whether the overdose was accidentally administered or suicide.

The "accidental death benefit" in the policy reads as follows:

As a part of the policy proceeds, the Company agrees to pay an accidental death benefit equal to the face amount of the policy, upon receipt of due proof that the death of the insured, (1) resulted directly and independently of all other causes from the accidental bodily injury, . . .

*Id.* at 868.

As there was no visible contusion or wound on the exterior of the body as required by the policy, the plaintiff had the burden of proof to show that the death of decedent resulted from a bodily injury and that if internal, the bodily injury was visibly manifest on the autopsy; and that it was accidental.

In affirming the trial court, the Missouri Court of Appeals first addressed the issue of whether the death resulted from a "bodily injury." The court noted that the policy contained no definition of the term "bodily injury." The court cited with approval the following from 44 Am.Jur.2d, *Insurance*, §§ 1223, p. 72 where it states:

The term 'bodily injury' is often used in describing the coverage of accident insurance policies or provisions. It is difficult, however, to lay down an accurate and definite general rule as to what constitutes 'bodily injury' within the meaning of accident policies, or life policies with accident features, and the determination of the question depends upon the facts of the case.

*Id.* at 869.

In noting that the other jurisdictions held that a similar type death had been construed as an injury occurring within the insured's body, the court held that the evidence supported the conclusion that the bodily injury was an internal one, and that it was visibly manifest on the autopsy.

Addressing the issue as to whether the bodily injury was "accidental," the court noted that the policy did not contain the term "accidental means" frequently found in accident insurance policies. The court further stated:

In 45 C.J.S. Insurance § 753b, p. 778, it is said: "If death or injury is the unexpected or unintentional result of some act, although voluntarily done by deceased or the person injured, it is an accidental death or injury."

In *Applebury v. John Hancock Mutual Life Insurance Co.*, 379 S.W.2d 867, 870 (Mo.App.1964) the court quoted with approval the following language from 45 C.J.S. Insurance § 753b, pages 779, 780: "If the death or injury, although unforeseen or unexpected, results directly from insured's voluntary act, unaccompanied by anything unexpected, unusual, or unforeseen, it is not death or injury by accidental means, *although the result may be such as*

*to constitute an accidental injury."* (Emphasis added.)

*Id.* at 872.

In conclusion, the court stated:

But the policy is not couched in terms of "accidental means." Plaintiff makes a case, the other elements of her cause of action having been established, if the *injury,* as distinguished from the means by which the injury was accomplished, was accidental. The distinction is that between cause and effect. Although Thelma Kearbey may have intentionally consumed the fatal combination, the injury, that is the effect, was accidental if it was not intended.

. . . . .

In the case at bar, though there was no showing of accidental means, or accidental causes, there was a showing of accidental result if the plaintiff is entitled to the benefit of the presumption against suicide.

*Id.* at 873.

In *West v. Commercial Ins. Co. of Newark,* 528 A.2d 339 (R.I.1987), plaintiff brought an action against defendant to enforce disability payments under an insurance policy issued by it. The trial court granted a directed verdict for defendant at the close of plaintiff's proof. The plaintiff was shovelling snow from his driveway. He turned slightly and felt a pop or snap in his back, after which he claimed he was immediately physically disabled. After receiving medical attention and ultimately undergoing a laminectomy, defendant paid plaintiff's benefits under a policy insuring against "loss or disability resulting directly from accidental bodily injury . . . or . . . loss or disability resulting from sickness." Defendant made the payments under the sickness provision but when the limitation as to time expired they refused to pay under the accident provision, resulting in this litigation.

The Rhode Island Supreme Court reversed and remanded the case to the trial court. In reaching this result the court stated:

In the case at bar, no such limiting language appears anywhere in the policy that would invoke the means/result distinction

as delineated in *Kimball.* The policy in question here uses the terminology in the insuring clause, "This policy insures against: (1) loss or disability resulting directly from accidental bodily injury * * * or (2) loss or disability * * * resulting from sickness." There are no definitions of "accidental bodily injury" or "sickness" in the policy.

. . . . .

Thus we are left with a policy that provides for insurance coverage for disability "resulting directly from accidental bodily injury." "In interpreting the contested terms of the insurance policy, we are bound by the rules established for the construction of contracts generally. * * * The language used in the policy must be given its plain, ordinary, and usual meaning." *Malo v. Aetna Casualty and Surety Co.,* 459 A.2d 954, 956 (R.I.1983). Unquestionably, the plain, ordinary, and usual understanding of "accidental" does not give rise to a meaning limited to the characterization of the causation of the injury exclusive of the characterization of the injury itself. Indeed, Webster's Third New International Dictionary 11 (1976) defines both "accidental injury" and "accidental means." "Accidental injury" is defined as "injury occurring as the unforeseen and chance result of a voluntary act" whereas "accidental means" is defined as "an act or event preceding harm or damage to an insured that is sudden, unexpected, and not intended or designed by any person."

. . . . .

We think the term "accidental bodily injury," giving the terminology its plain, ordinary, and usual meaning, would describe an injury to the body that was unexpected and/or unintended by the insured without regard to any distinction between the resultant injury and the "means" or causation of that injury. The fact that the insured was injured while doing an act that he fully intended to do, shoveling snow, does not take the occurrence of this injury out of the bounds of an "accidental bodily

injury" since it was not expected that this activity would result in injury.

*Id.* at 341–42 (footnote omitted).

In *Kinney v. Home Security Life Ins. Co.*, 2 N.C.App. 597, 163 S.E.2d 520 (1968), plaintiff was a beneficiary under a life insurance policy issued to decedent, who was killed in an automobile accident when the vehicle she was driving crashed while travelling at a speed in excess of 90 miles an hour. The trial court granted judgment for defendant.

The policy in question called for proof showing that "death resulted solely from an accidental bodily injury * * * the phrase 'accidental death' means death resulting directly and solely from a. An accidental injury visible on the surface of the body or disclosed by an autopsy."

Defendant contended that under the terms of this policy the burden was on plaintiff to show not only that the means were externally visible or disclosed by an autopsy but also that they were accidental.

In reversing and remanding the case for a new trial, the court observed:

> However, defendant has failed to recognize that for purposes of coverage under an accident policy a distinction exists between the terms "accidental death" and "death by accidental means." The phrase "accidental means" as distinguished from "accidental death" refers to the occurrence or happening which produces the result rather than the result itself. They are not synonymous and coverage of the policy is materially affected by the use of the one or the other. The phrase "accidental death," as defined in the policy under consideration, and as distinguished from the phrase "death by accidental means," refers to the result itself rather than the occurrence or happening which produces the result.

*Id.* at 522.

In *Gottfried v. The Prudential Ins. Co. of America*, 82 N.J. 478, 414 A.2d 544 (1980), plaintiff, widow of deceased, sought to recover accidental death benefits under several insurance policies issued by various defendants who denied liability, primarily on the ground that no coverage was intended for death resulting from voluntary exertion as opposed to some unforeseen and unexpected "accident." The evidence was undisputed that decedent's death was caused by an acute myocardial infarction following his voluntary participation in a vigorous basketball game. There was also proof that decedent generally enjoyed good health and had never experienced heart problems before.

The Supreme Court reversed the trial court and the intermediate appellate court and entered judgment for plaintiff against all defendants. In so doing the court pointed out the clear distinction between an "accidental means" policy and an "accidental bodily injury" policy. It quoted the following with approval from an earlier New Jersey case:

> Where policies provide benefits in the event of "accidental bodily injuries," as distinct from those, as in the case at bar, conditioning payment upon sustainment of injuries "effected * * * through * * * accidental means," coverage has been found in the event of heart injury occurring as the result of a voluntary act, although the particular jurisdiction recognizes the distinction between accidental death and death resulting form accidental means. (Citations omitted.)

> •   •   •   •   •

> [T]he reasonable expectation of a policyholder, faced with the facts in this case (including the lack of knowledge of any preexisting disease), is that a heart attack following strenuous physical activity, even though voluntary, would constitute an "accidental bodily injury."

*Id.* at 554, 556.

In line with the above authorities, this court is of the opinion that the trial court erred in holding that the term "accidental bodily injury" as used in Provident's policy should be interpreted as "an injury caused by accident." The fact that the plaintiff was injured while doing an act that he fully intended to do (turning on his office stool and reaching for a chart) does not take the occurrence of this injury out of the bounds of "accidental bodily injury" as it was not anticipated or expected that this activity would result in injury. We are of the opinion that the unintended and unforeseen back injury

that resulted from plaintiff's turning and reaching activities in his office was, under the terms of Provident's policy, an "accidental bodily injury."

Accordingly, for the above-stated reasons, the judgment of the trial court granting summary judgment to Commercial is affirmed. The order granting summary judgment as to Provident is reversed. The case is remanded to the Circuit Court of Shelby County for a trial on the merits as to Provident. Costs in this cause are taxed one-fourth to plaintiff and three-fourths to Provident, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.