**Betty MARTIN–GILLIAM,**
**Plaintiff/Appellee,**

v.

**The CONTINENTAL INSURANCE CO.**
**and Commercial Life Insurance**
**Co., Defendants/Appellants.**

Court of Appeals of Tennessee,
Western Section, at Nashville.

June 30, 1993.

Application for Permission to Appeal Denied by Supreme Court Nov. 29, 1993.

Luther E. Cantrell, Jr., Nashville, Joseph O. Fuller and Charlton R. DeVault, Jr., Kingsport, for defendants/appellants.

John R. Cheadle, Sr. and Evalina C. Cheadle, Nashville, for plaintiff/appellee.

FARMER, Judge.

This appeal is from the trial court's judgment affording coverage to Appellee under a personal accident insurance plan issued by Appellants.

1. Appellee testified that she preferred the name "Martin." Therefore, we will refer to her as "Martin" or "Appellee" throughout this opinion.

2. The proof shows that Eastern administered the plan by deducting a monthly premium from the payroll of each employee who wished to participate and providing a check to Appellants.

In March 1990, Appellee, Betty Martin–Gilliam[1] filed suit against Appellants, The Continental Insurance Company (Continental) and Commercial Life Insurance Company (Commercial Life) to recover disability benefits allegedly due under an insurance plan provided through her employer, Eastern Airlines, Inc. (Eastern), for whom she worked as a flight attendant.[2] Martin averred that the plan, "Group Special Risk," was offered by Continental and currently underwritten by Commercial Life.[3] Martin claimed that she had been permanently totally disabled since December 30, 1986 when she sustained a back injury while performing her duties as flight attendant.

Pertinent provisions of the plan summary booklet are as follows:

PERSONAL ACCIDENT INSURANCE
ELIGIBILITY

Flight Attendants become eligible to participate in this Plan after 60 days of Active Service with Eastern....

. . . .

PROGRAM DESCRIPTION

. . . .

Plan I—provides worldwide coverage ... for you ... against accidents occurring in the course of business or pleasure ... including accidents that occur while you are riding as a passenger (but not as a pilot or crew member except in Eastern operations)....

It also provides worldwide coverage, ... while acting as a pilot or crew member on Eastern operations in any previously tried, tested and approved aircraft, operated by a properly certificated pilot.

.     .     .     .     .

PERMANENT TOTAL DISABILITY

If you incur a continuous "permanent total disability" which lasts for twelve consecutive months, you will receive the

3. Thomas J. Wiggins, the national underwriting manager for Commercial Life, testified that Continental originally owned Commercial Life, but later sold it and all of Continental's "accident business" to another corporation.

"Principal Sum," less any other amount paid or payable under the policy for the same accident.

Permanent Total Disability is defined as one that, within 180 days of the accident, prevents you from engaging in any occupation or employment for which you are fitted by reason of education, training or experience for the remainder of your life.

EXCLUSIONS

Benefits will not be paid under Plan I and II for any loss or liability caused by or resulting from any one or more of the following:

. . . .

d. Illness, disease, pregnancy, childbirth, miscarriage, bodily infirmity. . . .

The operative language of the Group Special Risk Policy reads as follows:

TO INSURE such eligible persons of the Policyholder (herein individually called the Insured) . . . against loss described in PART I—Description of Coverage [4] against loss resulting directly and independendently [sic] of all other causes which arise out of the hazards described in . . . Plan II . . . as set forth below:

. . . .

Plan II—Loss resulting directly and independently of all other causes from bodily injuries caused by accident while this Policy is in force, . . . only while acting as a pilot or crew member on the business of the Policyholder in any previously tried, tested, and approved aircraft. . . . [5]

The policy includes the exclusions set forth above in the summary booklet and its definition of "Permanent Total Disability" is essentially the same. The policy further provides that the "maximum amount" payable under Plan II is $250,000.[6]

Commercial Life denied Martin's claim for $250,000, filed March 23, 1989, stating that her loss did not "result directly and independently of all other causes from bodily injury caused by the accident while this Policy in in [sic] force." Martin's suit was brought pursuant to 29 U.S.C. § 1001 et seq[7] and common law breach of contract. She also claimed that Appellants violated T.C.A. § 56–7–105 by refusing, in bad faith, to pay the claim within 60 days after demand.

At trial, Martin testified that she completed training school for Eastern in December 1968 and purchased the insurance policy in question in September 1972. She described her duties as a flight attendant as follows: "to assist and serve passengers, walk and stand for at least two hours; be able to lift 40 to 50 pounds; bending, stooping, stretching, pulling beverage carts and opening and closing of passenger doors." She sustained an original back injury in March 1975, when a passenger fell on her. She returned to work in April 1975 and was reinjured in May 1976 while attempting to remove a beverage cart from a storage compartment. Martin testified that she underwent a series of surgical procedures, beginning in September 1976, as a result of the accident involving the passenger that fell on her. She returned to work in March 1979, after an absence of 3 years. Her work at Eastern continued uninterrupted until 1984 when she strained her back loading meal carts. She returned to work in September 1984, experiencing no other incidents until the December 30, 1986 event in question which she described as follows:

A I was working first class on a Boeing 757 aircraft, and a passenger asked me to remove the armrest so she could take a nap, and I tried to remove the armrest and it wouldn't move, and I jerked and pulled and jerked and pulled and I never did get the armrest out, and I felt immediate pain in my back and it worsened as the trip continued.

. . . .

---

4. Part I—Description of Coverage includes "Coverage B—Permanent Total Disability."

5. Certificate Rider No. 1 amended coverage with respect to Plan II to read "on the operations of the Policyholder."

6. The policy states that the maximum amount payable under Plan I is $250,000. An endorsement to the policy provides that Plan II shall become part of Plan I, effective April 1, 1980 with respect to Flight Attendants.

7. Chapter 18—Employee Retirement Income Security Program.

A   I tried to pull and tug, pull and tug, and I never could get the armrest out,....

Q   You said that's when your injury occurred?

A   Yes, I was bent over pulling, jerking and tugging to try to get the armrest out.

At the close of trial, the Chancellor entered judgment for Martin finding that she sustained injuries "caused by accident" resulting in "permanent, total disability" within the meaning of the insurance policy. The court found "that there was nothing unexpected, unusual or surprising about [Martin's] jerking and pulling in an effort to remove the armrest; that the means of [Martin's] injuries was the unexpected successful refusal of the armrest to be removed by [Martin's] injurious exertions;...." The court further found that Appellants' refusal to pay the claim was not in bad faith.

We perceive the issue, in the instant appeal, as follows:

Whether the trial court erred in finding that Appellee's loss "resulted directly and independently of all other causes from bodily injuries caused by accident" and produced "permanent total disability," entitling her to benefits under the insurance policy issued by Appellants.

■   We note from the outset that Appellants raise the issue, in their brief, that the trial court erred in failing to apply federal common law to the terms and conditions of this "ERISA plan." Appellee counters that this issue was raised for the first time on appeal. We agree. The record reveals that at the trial of this matter, counsel for Appellants presented three issues or defenses before the court. Counsel stated:

The issues in this case are set out in the pretrial statement.... One, was the [Appellee] involved in an accident under the terms of the insurance policy....

The second issue in this lawsuit ... is was the injury which she had, or the loss which [Appellee] had, the direct result and independent of all other causes from bodily injuries?  In other words, ... if there was an accident, was this accident the only thing that caused her condition on which we're here on today....

... the third issue is under the terms of the policy did the condition for which she now sues render her permanently and totally disabled for a period of 12 consecutive months, and did it prevent her from engaging in any occupation or employment for which she is fitted by reason of her education, her training and her experience, for the rest of her life.

The Chancellor determined, "[t]he only issues raised by the defense are the three questions that he put in his pretrial statement...."  The record shows that during trial Appellants argued the applicability of Tennessee law, specifically asserting, "[t]he Tennessee case law defines accident...." and "what we've got to look at is the Tennessee law...."  Appellants, in their reply brief, assert that "it is Tennessee law which applies to [Appellee's] claim and contract language, either directly or through the ERISA saving clause...."[8]  As the issue was not pursued at trial, we will apply Tennessee decisional law.

■   Martin argues that she is entitled to disability benefits under a policy providing coverage for "[l]oss resulting directly and independently of all other causes from *bodily injuries caused by accident.*"  (Emphasis added.)  The policy does not define the term "accident."  This Court has had recent opportunity to construe the term "bodily injury caused by accident."  In *Spears v. Commercial Ins. Co.,* 866 S.W.2d 544 (Tenn.App. 1993), the plaintiff sought disability benefits allegedly due under separate policies issued him by two insurers.  *Spears,* 866 S.W.2d at 546.  One policy conditioned coverage on the insured being "wholly and continuously disabled by reason of such injury."  *Id.* at 547.

8.  There is authority supporting Appellants' proposition.  State decisional law regarding the terms of insurance contracts has been held as law which clearly "regulates insurance" and thus, not preempted by ERISA pursuant to the saving clause, 29 U.S.C. § 1144(b)(2)(A).  *See, Winchester v. Prudential Life Ins. Co. of America,* 975 F.2d 1479, 1484–85 (10th Cir.1992).  We make no determination, in the instant case, as to whether Tennessee decisional law regarding the terms of this insurance contract is or is not preempted by the saving clause, as this issue was not considered by the court below.

"Injury" was defined as "bodily injury caused by an accident...." *Id.* The plaintiff claimed total disability due to a back injury sustained when he turned around while sitting on a stool to pick up one of his dental patient's charts hanging on the wall. *Id.* at 546.

In finding that the plaintiff was not entitled to benefits under the policy as written, *Spears* stated:

Many years ago our Supreme Court recognized the distinction between "accidental means" and "accidental results" as those terms are used in insurance policies. In *Stone v. Fidelity and Casualty Co. of New York*, 182 S.W. 252 (Tenn.1916), the court stated:

The general rule is that an injury is not produced by accidental means, within the meaning of this policy, where the injury is the natural result of an act or acts in which the insured intentionally engages. A person may do certain acts the result of which produces unforeseen consequences resulting in what is termed an accident; yet it does not come within the terms of this contract. The policy does not insure against an injury that may be caused by a voluntary, natural, ordinary movement, executed exactly as was intended.

Therefore, to determine the matter, we look, not to the result merely, but to the means producing the result. It is not sufficient that the injury be unusual and unexpected, but the cause itself must have been unexpected and accidental.

*Id.*

In *Stone*, plaintiff ruptured the retina of his left eye when he raised a newspaper above his head while lying in bed. The court held that he had not sustained an injury by accidental means as the movement producing the injury was executed exactly as he intended. The court said "while the result was not foreseen, the causes producing that result were not accidental." *Id.* at 253.

In *Seeley v. Pilot Fire & Casualty Co.* [222 Tenn. 33], 432 S.W.2d 58 (Tenn.1968), this same distinction was again made. The insurance policy under consideration in *Seeley*, provided coverage for "bodily injury, caused by accident (a) while occupying the owner automobile...." *Id.* [432 S.W.2d] at 60. The insured strained his back when he stepped from the ground into the truck without stepping on the running board, thereby twisting his back.

The court pointed out that there were no Tennessee cases construing the term "injury caused by accident," but recognized the similarity between the terms "accidental means" and "injury caused by accident." The court held that the terms were interchangeable and ruled that plaintiff's injuries were not caused by accident as his actions in stepping directly to the floorboard of the truck were intentional and voluntary. It stated:

We find nowhere in plaintiff's allegations any hint or inference that anything untoward, unforeseen, unexpected or fortuitous happened, except the injury. He does not claim that his foot slipped, or that he accidentally failed to see or missed the running board, or that there was any other intervening factor. Under these circumstances there can be no doubt that only the result, the injury, was accidental, and that plaintiff's injury was not "caused by accident."

*Id.* at 62.

*Id.* at 547–548. *Spears* concluded that the plaintiff's injuries were not due to "accident" when he "intentionally and voluntarily turned around while sitting on a stool and reached for a patient's chart hanging on the wall" as this "was a natural movement with an unforeseen result." *Id.* at 548.

In the instant case, Martin testified that she "tried to remove the armrest and it wouldn't move, and [she] jerked and pulled and jerked and pulled and ... never did get the armrest out...." We conclude that Martin's injury was not "caused by accident" as her own testimony reveals the means of her injury to be the intentional and voluntary jerking and pulling movements she engaged in to remove the armrest.

Martin argues that her injury resulted "from the unexpected malfunction of the armrest." We find that the proof does not support this argument. When asked whether it was "unusual for those armrests to have

that problem," Martin responded, "No." She stated that she had previously removed the armrests, that they were "supposed to come out," and that she had never had this particular trouble before. She further testified that some of the armrests were easily removed and "some were difficult." We conclude that the malfunctioning of the armrest was not unexpected.

Appellants assert that Martin is not entitled to benefits under the plan and rely upon the provision in the plan summary booklet which reads, "[i]f, while the coverage is in force, accidental bodily injury to an insured individual directly and independently of all other causes, results in any of the following losses within one year after the date of the accident, the insurance company will pay the sum indicated for each loss." The specific losses mentioned do not include the type of loss claimed by Martin. Thus, we agree that she is not entitled to recover under this provision.

In view of our ruling, it is not necessary to consider whether Martin was permanently totally disabled or whether the incident was the sole cause of her injuries. The judgment of the trial court is reversed and this cause remanded. Costs are taxed to Appellee, for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.