**Glenda SMITH, et al., Plaintiffs,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. 91–2578–M1/A.**

United States District Court, W.D. Tennessee, Western Division.

Nov. 8, 1994.

Timothy C. Naifeh, Tiptonville, TN, for plaintiffs.

John W. Price, Dyersburg, TN, for defendant.

## MEMORANDUM OPINION

McCALLA, District Judge.

The complaint in this action was originally filed in the Circuit Court of Dyer County by the plaintiffs Glenda Smith, Erica Jean Smith, and Brandy Jo Smith, as the widow, children, and beneficiaries of Gary H. Smith under a life insurance policy issued by defendant Life Insurance Company of North America. Defendant subsequently removed this action to this Court under 28 U.S.C. § 1331 on the basis that the plaintiffs' claim to such benefits is by virtue of the decedent's participation in an employee welfare benefit plan established by his employer, as defined by the Employee Retirement Income Security Act of 1976 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

In their complaint, plaintiffs allege that decedent was insured and that plaintiffs are the beneficiaries under a policy for accidental death insurance issued by defendant through decedent's employer. Plaintiffs further contend that decedent's cause of death was "accidental" within the meaning of the terms of the policy issued by defendant, and therefore, benefits should be paid by defendant.

Defendant contends that decedent's death was a direct result of his voluntary intoxication at the time of the collision, and therefore, that pursuant to the policy's applicable exclusions, plaintiffs are not entitled to benefits in this case.

On November 22, 1993, a bench trial was held and the parties presented proof on the issues in this case. At trial, plaintiffs sought

$20,000 payable under the policy issued by defendant plus 25 percent penalty for bad faith, reasonable attorneys fees, and court costs.

## FINDINGS OF FACT

On October 27, 1990, Gary H. Smith was driving his car down a road in rural West Tennessee when he collided head-on with a combine. As Smith's vehicle collided with the combine, the combine's cutter bar came through the front window of Smith's vehicle and decapitated him. The combine, including the cutter bar, extended across the entire roadway. There were ditches on both sides of the roadway. Therefore, there was little room for either driver to maneuver to avoid the collision. The collision occurred at dusk, and the combine was operating with lights at the time of the collision. A blood sample taken from the decedent after the accident indicated that his blood alcohol level was .23, creating a presumption of intoxication under Tennessee law.

At the time of his death, Smith was employed by Electric Research and Manufacturing Corporation ("ERMCO") where he had in full force and effect an accident policy issued through his employer by the defendant. Plaintiffs are the beneficiaries of Gary H. Smith under the terms of the policy.

In a letter dated April 24, 1991, defendant stated that the defendant was not obligated to pay and would not pay plaintiffs under the policy's terms due to the decedent's intoxication at the time of the collision.

The language in the policy provides:

We agree to pay benefits for loss from bodily injuries:

a) *caused by an accident* which happens while an insured is covered by this policy;

b) which, directly and *from no other causes*, result in a covered loss. (emphasis added).

The policy also contained an Amendatory Rider which provides:

No benefits will be paid for:

7. Voluntary self-administration of any drug or chemical substance not prescribed by, and taken according to the directions of, a licensed physician.

## CONCLUSIONS OF LAW

The first issue for consideration by the Court is whether or not decedent's death was "accidental" within the meaning of the policy and as that term is understood in Tennessee law. In this case, the policy at issue did not define the term "accident" or elaborate on the meaning of the phrase "bodily injuries caused by an accident."

For many years, Tennessee courts have recognized a distinction between "accidental means" and "accidental results" as those terms are used in insurance policies. In *Stone v. Fidelity & Casualty Co. of New York,* 133 Tenn. 672, 182 S.W. 252 (1916), the Tennessee Supreme Court stated:

The general rule is that an injury is not produced by accidental means, ... where the injury is the natural result of an act or acts in which the insured intentionally engages.... The policy does not insure against an injury that may be caused by a voluntary, natural, ordinary movement, executed exactly as was intended. Therefore, to determine the matter, we look, not to the result merely, but to the means producing the result. It is not sufficient that the injury be unusual and unexpected, but the cause itself must have been unexpected and accidental.

While the policy at issue in the present case does not distinguish between "accidental means" and "accidental results," the Tennessee Supreme Court has recognized the similarity between the terms "accidental means" and "injury caused by accident" and has found the terms interchangeable. *Seeley v. Pilot Fire & Casualty Co.,* 222 Tenn. 33, 432 S.W.2d 58 (1968); *Nicholas v. Mutual Benefit Life Ins. Co.,* 451 F.2d 252 (6th Cir. 1971);[1] *Spears v. Commercial Insurance Co.*

1. In *Nicholas,* the Sixth Circuit observed that the *Seeley* court's equating the terms "accidental means" and "injuries caused by accident" appears to be irreconcilable with the well-established doctrine in Tennessee that insurance policies if doubtful, uncertain, or ambiguous in meaning, are to be construed most strongly in favor of coverage for the insured. However, as

*of Newark, New Jersey,* 866 S.W.2d 544 (Tenn.Ct.App.1993).

In *Seeley,* the insurance policy at issue provided coverage for "bodily injury, caused by accident." The insured in *Seeley* strained his back when he stepped from the ground into a truck without stepping on to the running board, thereby twisting his back. As the court equated the terms "accidental means" and "injuries caused by accident," the court held that the insured's injuries were not caused by accident as his actions in stepping directly to the floorboard of the truck were intentional and voluntary. *Id.* 432 S.W.2d at 62.

In determining that only the resultant injury was accidental and that the insured's injury was not caused by "accidental means," the court noted that in the insured's allegations there was "no hint or inference that anything untoward, unforeseen, unexpected, or fortuitous happened, except the injury." In *Seeley,* the insured did not claim that his foot slipped, or that he accidentally failed to see or missed the running board, or that there was any other intervening factor. *Id.*

■ In the instant case, however, plaintiffs do allege that the decedent's death was caused by unforeseen or unexpected occurrences—the combine driver's negligence in obstructing the roadway and in failing to safely position the combine's header. As the Sixth Circuit noted in *Farmers Bank & Trust Co. of Winchester, Tennessee v. Transamerica Insurance Co.,* 674 F.2d 548 (6th Cir.1982), Tennessee case law recognizes that the burden is on the insured to prove the essential elements of his cause of action to recover under an insurance policy. *Id.* (citing *Curtis v. American Casualty Co.,* 60 Tenn.App. 204, 445 S.W.2d 661 (1968)). Specifically, the insured must prove that the death or injury of the insured was the result of a cause, and was sustained in a manner, covered by the policy. *Id.* (citing *Gilmore v. Continental Casualty Co.,* 188 Tenn. 588, 221 S.W.2d 814, 815 (1949)).

In the present case, it is undisputed that it was dusk or slightly after dark when decedent's vehicle collided with the combine. It is also undisputed that the rural road where the collision occurred had little or no shoulder, but dropped off into ditches on each side, and that the combine's header, including the cutting bar, extended across virtually the entire width of the roadway. The evidence presented at trial, also indicated that decedent was not speeding at the time of the collision. The combine itself was moving at a slow speed and was brightly illuminated by field lights. There is no doubt that the combine lights could be easily seen more than one (1) mile away.

At trial, the plaintiffs presented evidence that the position and the glare of the combine's lights impaired decedent's view of the approaching combine. Plaintiffs claimed that the position of the combine's lights, the height of the cutting bar, and the fact that the header and cutting bar extended across the entire roadway were multiple causes of the decedent's "accident."

In fact, when asked by plaintiffs' attorney, Mr. Naifeh, about the cause of the accident, plaintiffs' expert accident reconstructionist, Mr. Pugh, testified at trial that the accident had multiple causes, one of them being decedent's intoxication.

By Mr. Naifeh:

Q. ... Can you state whether or not in your opinion whether intoxication was the sole and proximate cause of this accident?

A. In my opinion, ... there is a lot of cause in this accident.... I'm sure that intoxication had some bearing. The height of the header bar had some bearing. The glow of the lights had some bearing. The roadway being taken up completely had some bearing on it.

(Transcript of Robert Preston Pugh at 43).

■ From the evidence presented at trial, it is clear that decedent's voluntary consumption of alcohol, resulting in his blood alcohol level of .23, was at least a partial cause of the

---

the Sixth Circuit also noted, in a diversity case it is not the job of a federal court to criticize state law, but to determine the applicable rule and follow it. *Nicholas,* 451 F.2d at 256 n. 2. Likewise, in this case, we must also determine the applicable rule under Tennessee law and follow it.

collision. Thus, the collision did not occur solely by accidental means as required in the policy. In light of the evidence presented at trial, we find that plaintiffs have not met their burden of proving that decedent's death was "caused by an accident ... which, [results] directly and from no other causes" as required by the terms of the policy. *See Gilmore v. Continental Casualty Co.,* 188 Tenn. 588, 221 S.W.2d 814, 815 (1949) (when policy covered death resulting from injury effected solely through accidental means, burden was on plaintiff to show death was accidental and resulted from no other causes). Therefore, plaintiffs are not entitled to recover benefits under the policy in this case.

Because we find decedent's death was not "caused by an accident" as provided for by the policy, we need not consider the applicability of the policy's Amendatory Rider excluding benefits for the voluntary self-ingestion of any drug or chemical substance.

## CONCLUSION

Because we find that decedent's death was not "caused by an accident" within the terms of the policy, the plaintiffs are not entitled to recover benefits under the policy in this case. As we find that plaintiffs are not entitled to recover benefits under the policy, plaintiffs' claims for attorney's fees, court costs, and penalty for bad faith are hereby denied.

SO ORDERED.